Cynthia L. Martin, Judge
The State appeals from the trial court's interlocutory order granting Anthony West's ("West") motion to suppress all evidence collected from or as a result of the warrantless search and seizure of a semi-truck's electronic control module ("ECM"). The State asserts that the trial court clearly erred in granting West's motion to suppress because there was no evidence that West had a subjective expectation of privacy in the ECM to afford him standing to assert a violation of the Fourth Amendment; a warrant was not required because the automobile exception applied; a warrant was not required because exigent circumstances were present; downloading data from the ECM was neither a search nor a seizure because the data collected was merely a proxy for data which was visible to the public; a warrant was not required under the highly regulated industry exception; and a warrant was not required because there was probable cause to believe the semi-truck was an instrumentality of a crime. We affirm.
Factual and Procedural Background[2]
The State charged West with one count of involuntary manslaughter in the first degree in violation of section 565.024.[3] The State alleged that, on July 1, 2015, West was driving a semi-truck owned by his employer on Interstate 70 in Boone County when he recklessly failed to yield to stopped traffic and collided with a pickup truck operated by Mary Haile, causing her death.[4]
West filed a motion to suppress ("Motion to Suppress") "all evidence collected in this case, either directly, or as a result of the collection of initial evidence and data, from the warrantless search and seizure of the defendant's vehicle's Electronic Control Module and/or Electronic Control Unit ... data." West's motion argued that West was in lawful possession of the semi-truck (though he did not own same), and thus had a reasonable expectation of privacy in the truck affording him standing to challenge a warrantless search and seizure; that he thus had a reasonable expectation *410 of privacy in the data stored in the ECM requiring a warrant to search and seize the data; that search and seizure of the ECM data without a warrant was analogous to the warrantless GPS search deemed to violate the Fourth Amendment in United States v. Jones , 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) ; and that no exigent circumstances supported a warrantless search and seizure of the ECM data. The State did not file a written response to West's Motion to Suppress.
At a hearing on the Motion to Suppress, two officers testified. Missouri State Highway Patrol Corporal Devin Foust ("Corporal Foust") performed the initial investigation of the accident, and arrived at the scene between 9:10 and 9:20 a.m., shortly after the accident occurred. Corporal Foust testified that he spoke with West at the scene and that West indicated that the semi-truck's brakes did not work. Approximately three hours later, Corporal Foust went to the hospital where West had been transported, and asked West to consent to a blood draw to test for evidence of impairment. West consented to the blood draw.
Corporal Foust testified during the suppression hearing that while he was at the hospital, he was contacted by Missouri State Highway Patrol Sergeant Paul Meyers ("Sergeant Meyers") who asked Corporal Foust to see if West would consent to the download of data from the ECM in the semi-truck. Corporal Foust testified that West consented to the download of the data. However, Corporal Foust's contemporaneously prepared incident report did not include any reference to West consenting to a search of the ECM data from his semi-truck. In June 2017, nearly two years after the accident, Corporal Foust wrote a supplemental report at the request of the prosecutor which indicated that West consented to a search of the semi-truck's ECM at 12:15 p.m.
Sergeant Meyers, a major crash investigator who is certified in crash data retrieval, also testified at the suppression hearing. Sergeant Meyers testified that in July 2015, the Missouri State Highway Patrol's policy was that if an accident scene has not been disrupted and remains "pristine," and if the officers had reason to believe data existed in a vehicle's ECM, the officers would seize that data in order to investigate the accident. In other words, it was "standard practice" to download ECM data if possible without a warrant. Sergeant Meyers testified that he asked Corporal Foust to obtain West's consent to search the semi-truck's ECM because, while standard practice at that time did not require consent, "it's always better to get consent."
Sergeant Meyers testified that after Corporal Foust told him that West had given consent to search the ECM, he downloaded the ECM data from the semi-truck using the Missouri State Highway Patrol's computer and software. Sergeant Meyers testified that he extracted the ECM data on July 1, 2015, at 11:18 a.m.[5] However, Sergeant Meyers testified that he was unsure whether the time was accurate because the "computer that has the software on it is not linked to the Patrol system so it doesn't get updated regularly." Sergeant Meyers testified that he downloaded additional ECM data on July 2, 2015, when the semi-truck was at the tow facility.
*411 Sergeant Meyers explained at the suppression hearing what an ECM is and what kind of data it collects:
The ECM is like the brain of the truck. It controls all the functions of braking, throttle, transmission. Without an ECM on a diesel-modern diesel engine, they can't run. They need that ECM to operate.
....
As a part of their function, they store data. Based off the manufacturer determines what types of reports they run.
Ideally, they are a fleet management tool. It's something-if you own ten tractor-trailers and you're operating in Colorado, you can pull up these reports and you can modify the trucks to run in the mountains more efficiently; whereas, if you have a company in Colorado, you can pull up your ten trucks' reports, look at the PowerSpec downloads. You could-it's also a tattletale on your drivers, you know, to see who is doing what, how fast they are going, and, you know, what their trip summaries look like. So it's kind of a-for a lack of a better term, a snapshot or a look at how the trucks are operating and allows you the capabilities to modify them.
Sergeant Meyers testified that the ECM is standard operating equipment for a Cummins engine, like the one in the semi-truck driven by West.
Sergeant Meyers testified that a specialized computer and software is required to access ECM data, and that as a result, the ECM data cannot be accessed by the driver. He described the process for accessing ECM data as follows:
Every diesel engine manufacturer has their own software to read the ECMs on their engines. Cummins[, the manufacturer of the engine in West's semi-truck], uses a program called Insite or PowerSpec.
[The Missouri State Highway Patrol has] a license through Cummins to use the PowerSpec software.
....
We also use a Nexiq translator box. Basically it's a go-between the ECM to the software. It allows the data to transfer over to be read by the software. In a Cummins report, it's very simple. There is a nine-pin connector underneath the dash. You plug it in, put power to the Nexiq box, plug it into the laptop, turn the ignition to the on switch. It communicates with the software, says it recognizes, I see a truck or I see an ECM, and it tells you what reports are available.
Sergeant Meyers testified that there is a risk that data on the ECM can be lost if it is not downloaded at the scene because the ECM on a Cummins engine only stores three records on a rolling basis. When Sergeant Meyers arrived on the scene at approximately 10:30 a.m., the semi-truck "still had power," but Sergeant Meyers did not know whether it would have been able to be driven down the road.
West also testified at the suppression hearing. West testified that after the accident, he went to the hospital. While there, Corporal Foust asked West for consent to search his phone and to take a blood sample. West gave consent for both. When asked if he gave consent to retrieving the ECM data, West testified as follows: "I never heard nothing [sic] about ECM until the other day when you contacted me and told me that we had to come to court for this. I don't know nothing about ECM."
Following the presentation of evidence, the trial court consulted with counsel for the State and West to clarify the issues it needed to determine to rule on the Motion to Suppress. First, the State asserted that West failed to meet his burden to establish *412 that he had standing to challenge the search and seizure of the ECM and its data because West did not have an expectation of privacy in the data collected by the ECM. West responded that he had standing to assert a Fourth Amendment violation because he had a reasonable expectation of privacy in the semi-truck as a permissive, lawful user of the semi-truck, which extended to the ECM recorder located in the truck. West also responded that, even if his expectation of privacy in the semi-truck did not extend to the ECM, he independently had a reasonable expectation of privacy in data stored in the ECM regarding his operation of the semi-truck. West added that the United States Supreme Court decision in United States v. Jones , 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), which involved a GPS device attached without a warrant, analogously applied to require suppression. Second, the State argued that, if West did have standing to assert a Fourth Amendment violation, then a warrantless search was permitted because: (1) West consented to the search; (2) the automobile exception applied; and (3) the exigent circumstances exception applied to permit a warrantless search of the ECM because of a risk that ECM data would be lost when the semi-truck was moved. West responded that he did not consent to a search of the ECM, and that the evidence did not establish a basis for a warrantless search under either the automobile or the exigent circumstance exceptions.
The trial court took the matter under advisement, and then granted West's Motion to Suppress. The trial court found "that [West] had a reasonable expectation of privacy in the ECM" so that West "has standing to contest the search and seizure of the ECM and ECM data." The trial court concluded that it could not "find with sufficient certainty that [West] consented to the ECM search."[6] Finally, the trial court found that "there were no exigent circumstances that obviated the requirement to obtain a search warrant for the ECM." Thus, the trial court's order "grant[ed] [West's] motion to suppress ECM evidence and data and all opinions based on ECM evidence and data."
The State filed a timely appeal.[7]
Standard of Review and Burden of Proof
We "will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous." State v. Holman , 502 S.W.3d 621, 624 (Mo. banc 2016). Clear error exists if, after reviewing the entire record, we are " 'left with a definite and firm belief a mistake has been made.' " Id. (quoting State v. Bell , 488 S.W.3d 228, 238 (Mo. App. E.D. 2016) ). "A trial court's ruling on a motion to suppress must be supported by substantial evidence." State v. Johnson , 354 S.W.3d 627, 631 (Mo. banc 2011). In determining whether the ruling is supported by substantial evidence, we must "defer 'to the trial court's factual findings and credibility determinations and consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling.' " State v. Shegog , 521 S.W.3d 628, 633 (Mo. App. W.D. 2017) (quoting State v. Lammers , 479 S.W.3d 624, 630 (Mo. banc 2016) ). As such, we disregard all contrary evidence and inferences. State v. Norfolk , 366 S.W.3d 528, 531 (Mo. banc 2012). While we give deference to the trial court's findings of fact, we *413 review all questions of law de novo. State v. Gaw , 285 S.W.3d 318, 320 (Mo. banc 2009). "Despite the deference we afford the trial court's order, 'the ultimate issue of whether the Fourth Amendment was violated is a question of law which [we] review[ ] de novo. ' " State v. Humble , 474 S.W.3d 210, 214 (Mo. App. W.D. 2015) (quoting State v. Ramires , 152 S.W.3d 385, 391 (Mo. App. W.D. 2004) ).
"[T]he State has the ultimate burden of showing that a motion to suppress should be overruled...." State v. Williams , 485 S.W.3d 797, 800-01 (Mo. App. W.D. 2016). "The burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled." Section 542.296.6. However, the proponent of a motion to suppress "has the initial burden of proving that he is a person who is 'aggrieved' by an unlawful search and seizure pursuant to [s]ection 542.296." Williams , 485 S.W.3d at 801. " 'The language of section 542.296.1, conferring standing to file a motion to suppress upon an 'aggrieved' person, is nothing more than codification of the standing requirements under the Fourth Amendment as set forth by the United States Supreme Court.' " Id. (quoting State v. Brown , 382 S.W.3d 147, 157 (Mo. App. W.D. 2012) ).
Analysis
The State raises six points on appeal claiming clear error in the trial court's grant of the Motion to Suppress. In point one, the State alleges that West did not have standing to challenge the search of the ECM because he did not have a subjective expectation of privacy in either the ECM or its data. In point two, the State argues that a warrantless search and seizure of the ECM and its data was permitted by the automobile exception. In point three, the State argues that a warrantless search of the ECM and data was permitted because of the exigent circumstances exception. In point four, the State argues that downloading data from the ECM was neither a search nor a seizure under the Fourth Amendment because the data collected was merely a proxy for data which was visible to the public. In point five, the State argues that a warrant was not required to search the ECM and data under the highly regulated industry exception. In point six, the State argues that a warrantless search of the ECM and its data was permitted because there was probable cause to believe the semi-truck was an instrumentality of a crime.
Preservation of Error Claimed by Points on Appeal
Before we address the merits of the State's points on appeal, we must first determine whether the State's claims of error are preserved for appellate review. "On appeal, the appellant, not the respondent, has the 'burden of showing erroneous action on the part of the trial court.' " Ramires , 152 S.W.3d at 397 (quoting State v. Hensley , 770 S.W.2d 730, 731 (Mo. App. S.D. 1989) ). To preserve an issue for review, "the appellant is required to raise that issue with the trial court below to give it an opportunity to take remedial action." Id. We will not convict a trial court of error for reasons not presented to it and instead argued for the first time on appeal. State v. Stone , 430 S.W.3d 288, 290 (Mo. App. S.D. 2014). The purpose of this requirement is " 'to eliminate error by allowing the trial court to rule intelligently and to avoid the delay, expense, and hardship of an appeal and retrial.' " Id. (quoting Brown v. Brown , 423 S.W.3d 784, 787-88 (Mo. banc 2014) ).
In State v. Stone , the Southern District addressed appellate review preservation *414 requirements in the context of the State's interlocutory appeal of an order granting a motion to suppress. Id. at 290-91. The court noted that motions to suppress are unique in that they "routinely involve multiple complicated constitutional issues where 'very different and sophisticated analysis is required for each type of alleged violation.' " Id. at 291 (quoting State v. Wilson , 169 S.W.3d 870, 882 (Mo. App. W.D. 2005) ). The court reasoned that the "appellate preservation requirement, coupled with the trial court's freedom to reconsider its interlocutory ruling at any time before the challenged evidence is offered as evidence at trial minimizes the potential for the delay, expense, and hardship of an interlocutory appeal in the first instance." Id. Thus, the trial court should have before it "full development of an adequate record" so that it can make alternative "findings that are conducive to the resolution of all claims and contentions in a single interlocutory appeal." Id. This conclusion is particularly appropriate as it is the State which bears the burden of proof and the risk of nonpersuasion that a motion to suppress should be overruled.
Here, the record supports the conclusion that the State challenged West's Motion to Suppress on the ground of West's standing as an aggrieved party to assert a Fourth Amendment violation (the subject of point one on appeal); on the ground that a warrantless search of the semi-truck was permitted under the automobile exception (the subject of point two on appeal); and on the ground that a warrantless search of the semi-truck was permitted under the exigent circumstances exception (the subject of point three on appeal). We find the claims of error asserted in points one, two and three to be preserved for our appellate review.
However, the State did not argue below that downloading data from the ECM was neither a search nor a seizure under the Fourth Amendment because the data collected was merely a proxy for data which was visible to the public (the subject of point four on appeal); that a warrantless search of the ECM and data was permitted under the highly regulated industry exception (the subject of point five on appeal); or that a warrantless search of the ECM and its data was permitted because there was probable cause to believe the semi-truck was an instrumentality of a crime[8] (the subject of point six on appeal). We will not convict the trial court of error in granting a motion to suppress for reasons not presented to it. Stone , 430 S.W.3d at 290. As such, we deny points four, five, and six because they raise claims of error that have not been preserved for appellate review.
Point One: West's Standing to Assert a Fourth Amendment Violation
The State's first point on appeal argues that West was not an aggrieved *415 person with standing to assert a Fourth Amendment violation for search and seizure of data from the ECM because West did not have an actual, subjective expectation of privacy in the ECM or its data. As noted, supra , West bore the burden of proving that he was an aggrieved party with standing to challenge the constitutionality of the search of the ECM. Williams , 485 S.W.3d at 801.
The State's point on appeal relies on Missouri law which provides that where an expectation of privacy forms the basis to argue standing to assert a Fourth Amendment challenge, a "movant must establish that ... 'he has a legitimate expectation of privacy in the place or thing searched.' " Id. (quoting Brown , 382 S.W.3d at 158 ). "A two-part test exists for determining whether the movant has a legitimate expectation of privacy" to confer standing to assert a Fourth Amendment violation. Id. "First, the movant must have had an 'actual, subjective expectation of privacy in the place or thing searched.' " Id. (quoting State v. McCrary , 621 S.W.2d 266, 273 (Mo. banc 1981) ). "Second, that expectation of privacy must be objectively 'reasonable' or 'legitimate.' " Id. (quoting McCrary , 621 S.W.2d at 273 ).
The State's point on appeal challenges only whether West sustained his burden as to the first prong of this two-part test. Even then, the State does not challenge that West had an actual, subjective expectation of privacy affording standing to challenge a search of the semi-truck generally. In fact, it is settled in Missouri that a non-owner's permissive, lawful possession or control of a vehicle affords standing to challenge the search of the vehicle based on both an actual, subjective-and a reasonably objective-expectation of privacy. See Williams , 485 S.W.3d at 801-03. Instead, the State's argument presupposes that even though Williams had an actual, subjective expectation of privacy sufficient to afford standing to challenge a warrantless search of the semi-truck generally, that subjective expectation of privacy did not extend to the ECM and its data because West did not establish that he knew the ECM existed, and because in any event, West could not access the ECM data.
West responds that he had an actual, subjective expectation of privacy sufficient to support standing to challenge a warrantless search of the semi-truck generally, which necessarily encompassed the entirety of the semi-truck, including the ECM. West likens this case to the facts in Williams , 485 S.W.3d at 801-03, where evidence found in the trunk of a vehicle being operated by a lawful and permissive non-owner was suppressed. West alternatively argues that even if the ECM is not encompassed within his expectation of privacy with respect to the semi-truck generally, West independently had an actual, subjective expectation of privacy in the ECM and its data because the data was personal and unique to his use and operation of the semi-truck. Finally, West argues that the Supreme Court's decision in United States v. Jones , 565 U.S. 400, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012), supports the trial court's determination that he had standing because the State's physical intrusion into the semi-truck to access the ECM in order to download its data constituted a trespass upon an area (the semi-truck) where West possessed Fourth Amendment protection.
Here, the trial court found that West had standing to challenge the search and seizure of the ECM and its data because West "had a reasonable expectation of privacy in the ECM," because "[t]he ECM contained information unique to defendant's use and operation of the [semi-truck], and was not accessible to the public."
*416 The trial court did not address whether West's unchallenged expectation of privacy in the semi-truck generally extended to the ECM located within the semi-truck. Nor did the trial court discuss trespass as a basis for affording standing to assert a Fourth Amendment violation, the subject of the United States Supreme Court's decision in Jones . Instead, the trial court tackled an issue of first impression in this state: whether the search and seizure of data from a data collection device housed within a vehicle affords a lawful and permissive non-owner driver of the vehicle standing to raise a Fourth Amendment challenge based on a reasonable expectation of privacy in that data.
For purposes of this appeal, we are "primarily concerned with the correctness of the trial court's result, not the route the trial court took to reach that result, and the trial court's judgment must be affirmed if cognizable under any theory, regardless of whether the trial court's reasoning is wrong or insufficient." State v. Douglass , No. SC95719, 544 S.W.3d 182, 189, 2018 WL 830306, at *3 (Mo. banc Feb. 13, 2018) (considering the State's appeal from the trial court's decision to grant a defendant's motion to suppress); see also State v. McDonald , 170 S.W.3d 535, 540 (Mo. App. W.D. 2005) (affirming the trial court's decision to grant the defendant's motion to suppress on a different basis than what was argued to the trial court). We conclude that we need not decide the issue of first impression determined by the trial court-whether a non-owner driver of a vehicle has standing to assert a Fourth Amendment violation because the driver possesses an actual, subjective expectation of privacy in data recorded by an ECM regarding that driver's operation of the vehicle.[9] Nor need we decide whether a non-owner driver's expectation of privacy with respect to a vehicle generally extends to include an ECM housed within that vehicle whose data the driver cannot access. Instead, we can affirm the trial court's order granting the Motion to Suppress based on long-standing Fourth Amendment jurisprudence involving trespass as a basis to assert a Fourth Amendment violation as recently discussed in the United States Supreme Court's decision in Jones .
In United States v. Jones , the United State Supreme Court recognized that its "Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century" so that "the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates." 565 U.S. at 405, 406, 132 S.Ct. 945. Key to the trespassory test is whether "the Government obtains information by physically intruding on a constitutionally *417 protected area." Id. at 406 n.3, 132 S.Ct. 945.
The Court in Jones explained, however, that notwithstanding the long recognized connection between the Fourth Amendment and common-law trespass, later cases "deviated from that exclusively property-based approach." Id. at 405, 132 S.Ct. 945. For example, "[i]n Katz v. UnitedStates , 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), [the Court] said that 'the Fourth Amendment protects people, not places,' and found a violation in attachment of an eavesdropping device to a public telephone booth." Id. at 405-06, 132 S.Ct. 945. A violation of the Fourth Amendment was thus found to occur even in the absence of trespass "when government officers violate a person's 'reasonable expectation of privacy.' " Id. at 406, 132 S.Ct. 945 (quoting Katz , 389 U.S. at 360, 88 S.Ct. 507 (Harlan, J., concurring)). Katz and later decisions did not, however, "narrow the Fourth Amendment's scope." Id. at 408, 132 S.Ct. 945. Instead, "the Katz reasonable-expectation-of-privacy test has been added to , not substituted for , the common-law trespassory test." Id. at 409, 132 S.Ct. 945. Following this clarification in the law, Jones concluded that the Government's installation of a GPS tracking device to the undercarriage of a vehicle (a recognized "effect" pursuant to the Fourth Amendment), and the use of that device to monitor the vehicle's movements, constituted an actionable search under the Fourth Amendment pursuant to the trespassory test because "[t]he Government physically occupied private property for the purpose of obtaining information." Id. at 404, 132 S.Ct. 945. The Court thus did not address the Government's argument that the car's driver did not have a reasonable expectation of privacy in the area of the vehicle accessed by the Government (the undercarriage) because "Fourth Amendment rights do not rise or fall with the Katz formulation." Id. at 406, 132 S.Ct. 945. "At bottom, we must 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted.' " Id. (quoting Kyllo v. United States , 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001) ). Thus, "Jones, who possessed the [vehicle][10] at the time the Government trespassorily inserted the information-gathering device" had every right and basis under settled Fourth Amendment jurisprudence to complain that the Government unlawfully searched the vehicle he possessed when they "encroached on a protected area," the vehicle itself, to attach the device. Id. at 410, 132 S.Ct. 945. Key to the conclusion reached in Jones was whether the protected area trespasses in "one of those protected areas enumerated in the Fourth Amendment," that is "persons, houses, papers, and effects." Id. at 411, 406, 132 S.Ct. 945. "It is beyond dispute that a vehicle is an 'effect' as that term is used in the [Fourth] Amendment." Id. at 404, 132 S.Ct. 945.
Here, as in Jones , we need not address the State's argument that even though West had a reasonable expectation of privacy in the semi-truck generally, he did not have a reasonable expectation of privacy in ECM data he could not access and did not know existed. Just as was in Jones , West was the lawful operator and possessor of a vehicle he did not own at the time law enforcement trespassed on or into the vehicle to secure data from the vehicle. There is no dispute that to download data from the ECM, Sergeant Meyers entered, *418 and thus physically occupied, the semi-truck's passenger compartment to connect the Highway Patrol's computer to the ECM's nine-pin connector located underneath the semi-truck's dash. And there is no dispute that Sergeant Meyers did so to obtain West's data from the ECM. Sergeant Meyer's physical intrusion into, and occupation of, the semi-truck-a Fourth Amendment protected effect-constituted an actionable trespass on West's possessory interest in the vehicle, "conjoined with ... an attempt to find something or to obtain information." Id. at 408, 132 S.Ct. 945 n.5. As a result, West had standing to move to suppress the data downloaded from the ECM.[11] As was the case in Jones with a surreptitiously attached GPS device, West's alleged lack of knowledge that data about his operation of the semi-truck was being collected, and his inability to access the ECM data, are not relevant to the trespass analysis.
The trial court did not clearly err in concluding that West had standing to challenge the search and seizure of the ECM and its data.
Point One is denied.
Point Two: Automobile Exception
In its second point on appeal, the State asserts that the trial court clearly erred in granting the Motion to Suppress because the automobile exception applied to justify the warrantless search of the ECM and its data. In particular, the State contends that the automobile exception allowed the police to search the semi-truck, including the ECM and its data, for evidence of a crime without a warrant due to the inherent mobility of, and the diminished expectation of privacy in, the semi-truck. The trial court's order granting the Motion to Suppress did not address the automobile exception.[12]
"Under the automobile exception, 'police may search a vehicle and seize contraband found if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate the search.' " Humble , 474 S.W.3d at 216 (emphasis added) (quoting State v. Walker , 460 S.W.3d 81, 85 (Mo. App. W.D. 2015) ). " 'As a practical matter, exigent circumstances exist whenever an automobile is involved [because] the mere possibility that the vehicle can be moved is generally sufficient justification for a warrantless search.' " Walker , 460 S.W.3d at 86 (quoting State v. Middleton , 995 S.W.2d 443, 458 (Mo. banc 1999) ). We therefore presume, for purposes of this appeal, that the semi-truck's inherent mobility was sufficient to establish the exigent circumstance requirement for the automobile exception *419 to the warrant requirement.[13]
Thus, the availability of the automobile exception to excuse the State's failure to secure a warrant turns on whether there was probable cause to lead a reasonably prudent person to believe that contraband was located in the semi-truck. Id. " 'Probable cause to search an automobile exists when objective facts, under the totality of the circumstances at the time of the search, would lead a reasonably prudent individual to believe that contraband was located in the automobile.' " Id. (quoting State v. Irvin , 210 S.W.3d 360, 362 (Mo. App. W.D. 2006) ). "Essentially, probable cause requires a reasonable belief that it is more probable than not that the vehicle contains illegal items ." Id. (emphasis added).
Here, the State presented no evidence during the hearing on West's Motion to Suppress to suggest or establish that the police had probable cause to believe that contraband or illegal items were located in West's semi-truck. Though Sergeant Meyers testified about the data that is routinely recorded by a semi-truck's ECM, ECM data is neither contraband nor illegal. The State did not meet its burden to demonstrate by a preponderance of the evidence that the automobile exception justified its warrantless search of the ECM and its data.
The State argues that it was not required to establish that the police had probable cause to believe that there was contraband in the semi-truck, and that they were only obligated to demonstrate that probable cause existed to establish that there was evidence of a crime in the semi-truck. There are older Missouri Supreme Court cases which observe that " '[a] search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons or evidence of a crime are within the automobile exception is a well established exception to the Fourth Amendment warrant requirement.' " State v. Villa-Perez , 835 S.W.2d 897, 902 (Mo. banc 1992) (emphasis added) (quoting State v. Burkhardt , 795 S.W.2d 399, 404 (Mo. banc 1990) ). However, it is axiomatic that in order for there to be probable cause to believe that evidence of a crime is located within an automobile, there must first be probable cause to believe that a crime has occurred. See, e.g. , Middleton , 995 S.W.2d at 458 (where a vehicle described in a warrant being executed at a nearby house was found in a field, and an officer observed through the window an adhesive strip on the dashboard that appeared to match the adhesive strip on a clock discovered at a murder scene).
Here, the State presented no evidence to establish that Sergeant Meyers had probable cause to believe that a crime had been committed involving West's *420 truck.[14] As such, the State failed to establish that Sergeant Meyers, the officer who searched and seized data from the ECM, had probable cause to believe that evidence of a crime was within the truck. To the contrary, Sergeant Meyers testified that the Highway Patrol's practice at the time of West's accident was to seize data from a vehicle involved in an accident based solely on whether an officer believed data existed on the vehicle's ECM. Sergeant Meyers also testified that following adoption of the Driver Protection Act in 2015,[15] Highway Patrol troopers no longer engage in this practice, and now have a difficult time securing ECM data because they "are routinely refused consent," and "[s]earch warrants are refused based off the lack of a criminal charge." Sergeant Meyers's testimony underscores that ECM data was seized from West's truck not because there was probable cause to believe that West had committed a crime and that evidence of the crime could be found in the truck, but instead to investigate an accident to determine whether West had committed a crime. We are unwilling to expand the automobile exception to permit a warrantless search of an ECM to determine whether a crime was committed.[16] To do so would emasculate the Fourth Amendment's protection of vehicles from unreasonable searches and seizures.
Point Two is denied.
Point Three: Exigent Circumstances
In its third point on appeal, the State argues that the trial court clearly erred in granting the Motion to Suppress because exigent circumstances existed to justify the warrantless search. The State asserts that the testimony presented during the evidentiary hearing established that there was a risk that if the semi-truck were moved, the ECM data concerning the accident would have been lost.
"[T]here are exceptions to the general rule requiring a search warrant when exigent circumstances are present." State v. Hillman , 417 S.W.3d 239, 247 (Mo. banc 2013). "These 'exceptions include pursuing a fleeing felon, preventing the imminent destruction of evidence, preventing a suspect's escape, or mitigating the danger of law enforcement or other persons inside or outside of the dwelling.' " State v. Prince , 518 S.W.3d 847, 855 (Mo. App. W.D. 2017). In other words, " '[e]xigent circumstances exist if the time needed to obtain a warrant would endanger life, allow a suspect to escape, or risk the destruction of evidence.' " Hillman , 417 S.W.3d at 247 (quoting State v. McNeely , 358 S.W.3d 65, 69 (Mo. banc 2012) ).
Though the State argues that exigent circumstances were present in this case because of the risk that evidence would be destroyed if the semi-truck was moved before downloading the ECM data, the trial court found otherwise. The trial court's order stated:
[B]ased on the evidence presented, the Court finds that there were no exigent circumstances that obviated the requirement to obtain a search warrant for the ECM. A Missouri State Highway Patrol accident reconstructionist testified that he obtained ECM data two hours after *421 the accident and obtained brake data the following day. There is apparently a possibility that ECM data or "black box" data can be "written over" or that it is continually "looped," which could constitute an exigent circumstance, but there was insufficient evidence adduced at the hearing for the Court to conclude that such an occurrence was imminent in this case.
The trial court's finding is supported by substantial evidence. Though Sergeant Meyers testified that there was a risk that evidence on the ECM could be lost if it is not downloaded before the semi-truck was moved, his testimony did not identify an exigency that prevented securing a warrant to download the ECM data before the semi-truck was moved. In addition, the State's evidence established that Sergeant Meyers seized data from the ECM without a warrant on a second occasion, the day after the semi-truck was transported to a tow facility. The State has offered no evidence or argument to explain why the second download of data was justified by the exigent circumstances exception.
We must "defer 'to the trial court's factual findings and credibility determinations and consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling.' " Shegog , 521 S.W.3d at 633 (quoting Lammers , 479 S.W.3d at 630 ). The trial court's finding that no exigent circumstances existed was supported by substantial evidence.
Point Three is denied.
Conclusion
We affirm the trial court's order granting the Motion to Suppress.
All concur

We view the evidence in the light most favorable to the trial court's ruling. State v. Williams , 485 S.W.3d 797, 800 (Mo. App. W.D. 2016).

All statutory references are to RSMo 2000 as supplemented through July 1, 2015, the date the crime was allegedly committed.

The State initially charged West via complaint with one count of involuntary manslaughter in the second degree in violation of section 565.024, and later the State filed an indictment charging West with the same. The State later filed a superseding indictment charging West with one count of involuntary manslaughter in the first degree in violation of section 565.024.

This reported download time would have been just over two hours after Corporal Foust arrived at the accident scene. Corporal Foust testified he did not go to the hospital to talk to West until approximately three hours after he first spoke with West at the accident scene. And as noted, Corporal Foust's revised incident report indicated he secured consent from West at 12:15 p.m. on July 1, 2015.

The State has not challenged this finding on appeal.

Section 547.200.1(3) allows the State an interlocutory appeal "from any order or judgment the substantive effect of which results in ... [s]uppressing evidence."

Though the State did reference "probable cause" in its arguments before the trial court, it did so in direct reference to its discussion (albeit quite brief) of the automobile exception. As discussed infra , the automobile exception recognized in Missouri allows police to search a vehicle and seize contraband found " 'if there is probable cause to believe that the vehicle contains contraband and exigent circumstances necessitate the search.' " State v. Humble , 474 S.W.3d 210, 216 (Mo. App. W.D. 2015) (quoting State v. Walker , 460 S.W.3d 81, 85 (Mo. App. W.D. 2015) ). In its arguments to the trial court, the State did not raise probable cause in the context of supporting an exception to the warrant requirement where it is believed that a vehicle is an instrumentality of a crime. It is noteworthy as to this unpreserved claim that the State cites no Missouri authority recognizing this exception to the warrant requirement imposed by the Fourth Amendment. Because the issue is not preserved for our review, we express no opinion as to whether the exception would be recognized in Missouri.

The federal Driver Privacy Act of 2015 became effective after the accident at issue in this case. Section 24301 et seq. , 49 U.S.C. section 30101 note (2015). Pursuant to that Act, "[a]ny data retained by an event data recorder ... is the property of the owner, or, in the case of a leased vehicle, the lessee of the motor vehicle in which the event data recorder is installed." Section 24302(a). "Data recorded or transmitted by an event data recorder ... may not be accessed by a person other than an owner or a lessee of the motor vehicle in which the event data recorder is installed unless ... (1) a court ... authorizes the retrieval of the data; ... (2) an owner or a lessee of the motor vehicle provides ... consent to the retrieval of the data ...; ... (4) the data is retrieved for the purpose of determining the need for, or facilitating, emergency medical response in response to a motor vehicle crash; ...." Section 24302(b). We express no opinion on the application of this Act to someone like West who is an employee of the owner of a motor vehicle in which an event data recorder is installed.

The vehicle to which the Government attached the GPS tracking device was a Jeep Grand Cherokee that was operated by Jones but was registered to another person, namely Jones's wife.

In the vast majority of automobile search cases, it should be immaterial whether standing to assert a Fourth Amendment violation is grounded on a theory of trespass, or on the theory of a reasonable expectation of privacy. The only reason the difference in theories matters here is because of the State's novel argument that although West had an unchallenged reasonable expectation of privacy in the semi-truck generally, that expectation of privacy did not extend to the ECM-a fixture within and attached to the semi-truck-because West could not access the data in the ECM. Resolution of the novel issue raised by the State is unnecessary here as in collecting data from the ECM, the State plainly trespassed by entering into and occupying the semi-truck-a protected Fourth Amendment effect-to seize information therein.

We do not fault the trial court in this regard. The State's reference to the automobile exception in the record below was brief and fleeting, and beyond its bare mention, was not developed. We have generously afforded the State's bare mention of the automobile exception below as sufficient for purposes of preserving the argument for appellate review.

West argues that no exigent circumstances were present because, while a semi-truck is inherently mobile, the evidence demonstrated that, at the time of the search, his semi-truck was disabled and could not have been driven. The State argues that, in Michigan v. Thomas , the United States Supreme Court held that "the justification to conduct ... a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982). What the State fails to appreciate is that the Supreme Court was referencing the inventory search exception, not the automobile exception, in Thomas . We are not required to determine the applicability of Thomas to the automobile exception because, as discussed infra , there was no evidence presented at the evidentiary hearing that the police had probable cause to believe that the semi-truck contained contraband.

We reject the State's suggestion during oral argument that the mere fact West was involved in a rear-end collision constitutes probable cause to believe that a crime occurred.

See supra note 9.

If we were to adopt the State's position that the automobile exception applies where probable cause exists to believe that ECM data might afford evidence that a crime occurred, then the automobile exception to the warrant requirement would arguably apply to every vehicular accident, in violation of the Driver Privacy Act of 2015. See supra note 9.