

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI,           )
                                    )
                Respondent,   )
                                    )    **WD85536**
v.                               )
                                  )    **OPINION FILED:**
                                  )    **June 27, 2023**
TIMOTHY R. FERNANDEZ,    )
                                  )
                Appellant.    )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Charles H. McKenzie, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Karen King Mitchell and W. Douglas Thomson, Judges

Mr. Timothy Fernandez ("Fernandez") appeals from the judgment entered by the

Circuit Court of Jackson County, Missouri ("trial court"), following a bench trial in

which he was found guilty of murder in the second degree and armed criminal action.

We affirm.

## Factual and Procedural Background[1]

On February 5, 2019, Kansas City, Missouri, Police Department Officer Lubjomir

Maracic was dispatched to a gas station at 1704 Grand Boulevard in response to a

---

[1] "We view the facts in the light most favorable to the conviction[s]." *State v. Norman*, 618 S.W.3d 570, 572 n.1 (Mo. App. W.D. 2020) (internal quotation marks omitted).

shooting. When Officer Maracic arrived, he observed an individual lying face down in the parking lot; the individual appeared to be deceased. From fingerprints collected by a crime scene technician, the victim's identity was documented.

Mr. Christopher Graham, a chef at The Terrace on Grand, located at 1520 Grand Boulevard, loaded and unloaded groceries in the back alley, and it was common for him to find items in the alley. On February 7, 2019, he found a backpack in the alley to the west of Grand and his business. Mr. Graham went through the backpack and found several charging banks, a couple of phones, and some ammunition. The next day, when he realized that the items may be connected with the shooting at the gas station, he called the police.

On February 8, homicide Detective Scott Emery responded to 1520 Grand Boulevard after receiving information about Mr. Graham. Detective Emery was interested in the items that Mr. Graham found because there was video of the murder that showed the suspect wearing a very distinctive green backpack with red zipper pulls, and that was the description of the backpack that had been located. There was also a leather jacket that had been located, and the suspect was also wearing a leather jacket. Mr. Graham showed Detective Emery a large electrical box in the alley where he had found the items. When Detective Emery determined that the backpack Mr. Graham found was the green backpack with the red zipper pulls that the police were looking for, the detective requested that a crime scene technician respond. The crime scene technician photographed the contents of the backpack: an ammunition box with live

2

rounds inside, a handwritten note, a card with the name Terrance Bonner, three cell phones, a nasal-spray bottle, a Q-tip box, and toiletries.

The Deputy Chief Medical Examiner at the Jackson County Medical Examiner's Office performed an autopsy of the victim. He concluded that the cause of death was a gunshot wound to the back, and manner of death was homicide. The supervisor of the firearms section at the Kansas City, Missouri, Police Department Crime Laboratory ("Crime Lab") determined that the fired bullet was a .38 caliber class. The ammunition in the backpack was .38 caliber. The supervisor of the digital evidence section at the Crime Lab compared the surveillance video with the backpack and black jacket found by Mr. Graham, and determined that they were the same.

Homicide Detective Brent Taney was the lead detective in the case and reviewed the surveillance videos. Video footage at 1535 Walnut showed someone matching the description of the suspect at the gas station homicide scene wearing a black coat, backpack, and walking northbound through the alleyway. Shortly after the homicide, surveillance video showed a black male with similar characteristics walking northbound through the alleyway. But when he was walking through the alleyway at 1515 Walnut, he did not have a black coat or a backpack, just a maroon hooded sweatshirt and a red stocking cap. It appeared to Detective Taney that this person had discarded items while continuing to walk northbound through the alley. The gas station video not only showed the shooting but showed that prior to the homicide, the suspect had blown his nose on a tissue and disposed of it in the parking lot. Detective Taney went to the gas station on

February 6, 2019, to search for the tissue and found what appeared to be the same tissue on the south end of the parking lot. He requested that the Crime Lab conduct DNA testing of the tissue.

The Crime Lab DNA testing on the tissue, the toothbrush, and the nasal-spray bottle revealed that Fernandez's DNA was the DNA on the tissue and toothbrush, and Fernandez was the major contributor to the DNA on the nasal-spray bottle. A Crime Lab latent fingerprint examiner determined that the fingerprint on the Q-tip box recovered from the backpack was Fernandez's.

On April 26, 2019, Fernandez was charged with the class A felony of murder in the second degree and the unclassified felony of armed criminal action. A jury trial was conducted on October 19-23, 2020, and the jury returned verdicts of guilty as charged. On November 14, 2020, Fernandez filed a motion for new trial, asserting among other alleged errors, that the trial court erred in admitting the testimony of the police department's latent print examiner who testified regarding fingerprint comparisons she conducted, claiming the testimony and exhibits constituted hearsay and there was insufficient foundation. After an evidentiary hearing, the trial court granted Fernandez a new trial on February 8, 2021, concluding that because the examiner did not have any personal knowledge regarding how the specific jurisdiction that created the relevant fingerprint card took or maintained such records, her testimony regarding Fernandez's

4

alleged known prints could not be received as substantive evidence without a limiting instruction.

On December 16, 2021, Fernandez filed a motion to suppress "the DNA evidence of a coat and said items found inside of a back pack." On December 30, 2021, the trial court held a hearing on that motion and on Fernandez's motion to suppress video evidence and motion to dismiss. The trial court entered its order denying all three motions on December 30, 2021.

Fernandez requested to proceed *pro se* and waived his right to a jury trial. At the new bench trial, Fernandez presented no evidence. After reviewing the evidence, the trial court made an oral pronouncement of judgment, finding Fernandez guilty beyond a reasonable doubt of murder in the second degree and armed criminal action. After conducting a sentencing hearing, the trial court sentenced Fernandez to a term of twenty-seven years' imprisonment for murder in the second degree, and a term of five years' imprisonment for armed criminal action, with the sentences to run concurrently. On July 11, 2022, the trial court entered its written judgment reflecting its oral pronouncement of judgment and sentence.

Fernandez timely appealed.

## Points on Appeal

Fernandez asserts three points on appeal. In Points I and II, he contends that the trial court erred in overruling his motion to suppress DNA evidence and objections at trial to the DNA and fingerprint evidence recovered after the search of the contents of the backpack. He argues that the trial court's rulings violated his right to be free from

5

unreasonable search and seizure.  In Point III, Fernandez asserts that the trial court erred in overruling his motion to dismiss because the Double Jeopardy Clause barred a retrial of his case.

## Point I

### Standard of Review

"Appellate review of the denial of a motion to suppress is limited to a determination of whether there is substantial evidence to support the ruling." *State v. Delapp*, 581 S.W.3d 156, 159 (Mo. App. W.D. 2019) (internal quotation marks omitted).  "In making this determination, this court reviews both the record of the suppression hearing and the trial." *Id*. (internal quotation marks omitted).  "We give deference to the trial court's factual findings and credibility determinations, but questions of law, including whether the Fourth Amendment has been violated, are reviewed *de novo*." *Id*. (internal quotation marks omitted).

### Analysis

Fernandez claims in Point I that, during the suppression hearing, the trial court erred by placing the burden of proof on him to show that a warrantless search of the contents of the backpack was not improper.  Specifically, he argues that the State had the burden to produce sufficient evidence to persuade the trial court to overrule the motion to suppress; and because the State presented only argument and no evidence on the motion, the trial court improperly placed the burden of proof on Fernandez.

"At a hearing on a motion to suppress, [t]he State has the burden of showing by a preponderance of the evidence that the motion to suppress should be denied." *State v.*

*Anderson*, 629 S.W.3d 39, 43 (Mo. App. W.D. 2021) (internal quotation marks omitted). "This includes both the burden of producing evidence and the risk of non-persuasion." *Id*. (internal quotation marks omitted). At the suppression hearing, the State advised the trial court and Fernandez that the State was going to present "[j]ust argument," and at the new trial was "going to have the same witnesses with the same testimony" as at the first trial. The State further advised that, at the new trial, "[t]he [S]tate will have the same DNA witness who testified to DNA in both locations. Obviously[,] an adequate foundation will have to be laid in order for the [S]tate to get that information in."

Neither the State nor Fernandez presented any evidence at the hearing; but, during their arguments, both referred to evidence admitted in the prior trial. Fernandez did not object to the trial court conducting the hearing without requiring the State to present evidence duplicative of the evidence at the first trial before the same judge. "We will not convict a trial court of error for reasons not presented to it and instead argued for the first time on appeal." *State v. Savage*, 609 S.W.3d 71, 92 (Mo. App. W.D. 2020) (internal quotation marks omitted). "'[I]ssues raised for the first time on appeal are not preserved for appellate review.'" *State v. Bales*, 630 S.W.3d 754, 762 (Mo. banc 2021) (quoting *Heifetz v. Apex Clayton, Inc*., 554 S.W.3d 389, 397 n.10 (Mo. banc 2018)). Furthermore, "[a]ffirmatively acquiescing to an action by the trial court waives even plain error review." *State v. Gorombey*, 538 S.W.3d 353, 358 (Mo. App. W.D. 2018) (internal quotation marks omitted).

Point I is denied.

## Point II

## Standard of Review

The decision to admit or exclude evidence at trial is reviewed for abuse of discretion. *State v. Bowman*, 663 S.W.3d 916, 923 (Mo. App. W.D. 2023). "A trial court abuses its discretion when its ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (internal quotation marks omitted). "Evidentiary error alone does not require reversal; the appellant must have suffered prejudice as a result of the admission of the evidence." *Id*. "Trial court error in the admission of evidence is prejudicial if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error." *Id.* (internal quotation marks omitted).

## Analysis

In Fernandez's second point, he asserts that the trial court erred in overruling his motion to suppress and admitting evidence of the contents of the backpack. Specifically, he contends that the State failed to prove that he lacked a reasonable expectation of privacy in the contents of the sealed compartments of the backpack; therefore, the warrantless search of the sealed compartments of the backpack by the police violated his Fourth Amendment right to be free from unreasonable search and seizure.[2]

---

[2] "Article I, section 15 of the Missouri Constitution provides coextensive protection against unreasonable searches and seizures." *State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018).

Because the Fourth Amendment says nothing about suppressing evidence obtained in violation of its protections, the United States Supreme Court created the exclusionary rule to "'compel respect for the constitutional guaranty.'" *State v. Robinson*, 534 S.W.3d 279, 286-87 (Mo. App. W.D. 2017) (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960)). "The exclusionary rule provides that evidence obtained as a direct result of an unlawful search or seizure is considered 'fruit of the poisonous tree' and is inadmissible at trial." *Id.* (internal quotation marks omitted).

While "[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled," § 542.296.6, "the proponent of a motion to suppress has the initial burden of proving that he is a person who is 'aggrieved' by an unlawful search and seizure pursuant to [s]ection 542.296," *State v. West*, 548 S.W.3d 406, 413 (Mo. App. W.D. 2018) (internal quotation marks omitted). "The language of section 542.296.1, conferring standing to file a motion to suppress upon an 'aggrieved' person, is nothing more than codification of the standing requirements under the Fourth Amendment as set forth by the United States Supreme Court." *Id.* (internal quotation marks omitted).

"[W]here an expectation of privacy forms the basis to argue standing to assert a Fourth Amendment challenge, a movant must establish that . . . he has a legitimate expectation of privacy in the place or thing searched." *Id.* at 415 (internal quotation marks omitted). "A two-part test exists for determining whether the movant has a

legitimate expectation of privacy to confer standing to assert a Fourth Amendment violation." *Id*. (internal quotation marks omitted). "First, the movant must have had an actual, subjective expectation of privacy in the place or thing searched." *Id.* (internal quotation marks omitted). "Second, that expectation of privacy must be objectively reasonable or legitimate." *Id*. (internal quotation marks omitted).

"It is well established that a warrantless search or seizure of abandoned property does not violate the Fourth Amendment." *State v. Mosby*, 94 S.W.3d 410, 417 (Mo. App. W.D. 2003) (citing *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960)). "When property is abandoned, the constitutional protections against unreasonable search and seizure no longer apply, because those protections are designed to protect one's person and dwelling." *Id*. (internal quotation marks omitted). Hence:

> It is settled law that one has no standing to complain of the search or seizure of property which he has voluntarily discarded, left behind, or otherwise relinquished his interest so that he no longer retains a reasonable expectation of privacy with regard to it at the time of search or seizure.

*State v. McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981) (quoting *State v. Achter*, 512 S.W.2d 894, 899 (Mo. App. 1974)).

At the hearing on Fernandez's motion to suppress, Fernandez and the trial court engaged in the following colloquy:

> MR. FERNANDEZ:  . . . I would like to note that the whole gist of this motion is basically in relation to it being illegally searched, not seized.  I mean, it was abandoned.  According to the state, it was abandoned.  So in relation to this abandonment, it has to be—abandonment, for it to be searched, without first obtaining a warrant to do so.

THE COURT: As I remember from the evidence presented in the last case—and I'm not saying it's going to be the same evidence—but my memory of the evidence was that it is alleged that a backpack was abandoned in an alley, it was then retrieved by a private citizen, not law enforcement, and then the private citizen had it in his or her possession for a period of time, ultimately turned it over to law enforcement who then took various actions. Are you saying that it should be suppressed based upon what the private citizen did, Mr. Fernandez?

MR. FERNANDEZ: No. I'm saying it should be suppressed based on no warrant being obtained prior to searching it by authorities.

THE COURT: So you're saying that somebody had a privacy interest in the backpack after it was abandoned? Is that your position?

MR. FERNANDEZ: Yes. It was abandoned with all the compartments filled. . . .

. . . .

Therefore, with all the compartments sealed, there was nothing—it was—nothing was exposed to the public to make this accessible to the public. And in relation to that issue, that's where the need for the warrant comes in at.

Although Fernandez conceded that the backpack was abandoned, he contends that the State failed to prove that he lacked a reasonable expectation of privacy in the sealed compartments of the backpack. When renewing his motion to suppress at trial, Fernandez argued: "The bag in itself was abandoned, but the items inside the bag were not abandoned. It cannot be determined to be abandoned because the compartments of the bag were sealed." However, "[t]he test for abandonment in the search and seizure context is distinct from the property law notion of abandonment; it is possible for a person to retain a property interest in an item, but nonetheless to relinquish his or her reasonable expectation of privacy in the object." *Mosby*, 94 S.W.3d at 417 n.5 (internal

11

quotation marks omitted). Under the facts and circumstances of this case, Fernandez abandoned the backpack, and he no longer retained a reasonable expectation of privacy with regard to its contents, whether in sealed compartments or otherwise.

Furthermore, at trial, the surveillance video of the murder showed the suspect wearing a very distinctive green backpack with red zipper pulls. Surveillance videos showed the suspect walking northbound through the alleyway. But when he was walking through the alleyway at 1515 Walnut, he did not have the backpack. It appeared to Detective Taney that this person had discarded the backpack while continuing to walk northbound through the alley. The supervisor of the digital evidence section at the Crime Lab compared the surveillance video with the backpack found by Mr. Graham and determined that they were the same. The evidence in this case clearly indicates that Fernandez abandoned the backpack—and whatever reasonable expectation he may have had in it—when he discarded it in the alleyway behind Mr. Graham's business. The trial court did not abuse its discretion when it overruled Fernandez's motion to suppress and admitted evidence of the contents of the backpack at trial.

Point II is denied.

### Point III

### Standard of Review

"Whether an individual's right to be free from double jeopardy has been violated is a question of law, which this Court reviews *de novo*." *State v. Young*, 597 S.W.3d 214, 225 (Mo. App. W.D. 2019) (internal quotation marks omitted).

**Analysis**

Fernandez also contends that the trial court erred in overruling his motion to dismiss because his retrial violated the principle of double jeopardy. After a jury in the first trial found Fernandez guilty, he filed a motion for new trial, arguing in part that the trial court erred in allowing Julia Snyder to testify regarding fingerprint evidence. The trial court granted Fernandez's motion for new trial, finding that:

> Ms. Snyder testified that she did not have any personal knowledge regarding how the specific jurisdiction that created the relevant fingerprint card took or maintained such records. This is insufficient to admit her testimony regarding Defendant's alleged known prints and Exhibits 89, 90, and 91 under the business records exception. The Court holds the admission of such evidence over Defense counsel's objection and without providing a limiting instruction was prejudicial error sufficient to grant Defendant a new trial.

Thereafter, Fernandez filed a *pro se* Motion to Dismiss Charges, arguing in part that "[f]urther prosecution of the Defendant . . . would only result in Double Jeopardy becoming attached to the proceedings and thus infringe on Defendant[']s right to be free from being twice placed in jeopardy for the same offense[.]" The trial court denied the motion.

"The constitutional protection provided by the Fifth Amendment to the United States Constitution protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *State v. Hayes*, 23 S.W.3d 783, 792 (Mo. App. W.D. 2000) (citing *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998)). "The [D]ouble [J]eopardy [C]lause imposes no limitation upon the power of the State to retry a

13

defendant who has succeeded in persuading a court to set his conviction aside, unless the conviction has been reversed because of the insufficiency of the evidence." *Id*. (internal quotation marks omitted).

Fernandez claims that the trial court granted him a new trial because the evidence was insufficient to support the verdict. However, the record refutes Fernandez's claim. The trial court granted a new trial because of evidentiary *error*, not evidentiary *insufficiency*. As the trial court stated in its amended order granting a new trial: "The Court holds the admission of such evidence over Defense counsel's objection and without providing a limiting instruction was prejudicial error sufficient to grant Defendant a new trial."

Furthermore, at retrial, when Fernandez renewed his motion to dismiss on the grounds of double jeopardy, the trial court overruled the motion, explaining:

> It was very clear to the Court at the time and now that all the Court did was grant a new trial based upon a trial error that occurred where evidence was admitted with—and all is fully set out in both in my order. And so that was based upon the motion filed by counsel for the defendant at the time, Mr. Wiegert, seeking a new trial so the—that was the exclusive remedy I afforded, and I do not believe that means that double jeopardy attaches because you were the one that sought the new trial. So I overrule the motion.

And later, when Fernandez objected to the State calling the person who actually fingerprinted Fernandez, the trial court stated: "I won't go into the basis for my determination that a new trial was granted other than to say that the foundation was not adequate." "'[I]f a conviction is reversed solely due to trial error, then retrial is constitutionally permissible.'" *Hayes*, 23 S.W.3d at 792 (quoting *State v. Wood*, 596

14

S.W.2d 394, 398 (Mo. banc 1980)).  The trial court did not err in overruling Fernandez's motion to dismiss.

Point III is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
Mark D. Pfeiffer, Presiding Judge

Karen King Mitchell and W. Douglas Thomson, Judges, concur.