**STATE of Missouri, Respondent,**

v.

**Nicholas R. HILLMAN, Appellant.**

No. SC 93435.

Supreme Court of Missouri,
En Banc.

Dec. 10, 2013.

Rehearing Overruled Feb. 4, 2014.

240

N. Scott Rosenblum, Erin R. Griebel, Rosenblum, Schwartz, Rogers & Glass, St. Louis, for Hillman.

Jennifer A. Rodewald, Attorney General's Office, Jefferson City, for the State.

GEORGE W. DRAPER III, Judge.

Nicholas R. Hillman (hereinafter, "Defendant") appeals the trial court's judgment and sentence entered after a jury found him guilty of unlawful distribution of a controlled substance to a minor, section 195.212, RSMo 2000,[1] and attempted statutory sodomy in the second degree, section 566.064. Defendant raises four issues on appeal, challenging: (1) the lack of a complete transcript; (2) the exclusion of defense witnesses due to a discovery violation; (3) the failure to suppress evidence; and (4) the constitutional validity of section 559.115, RSMo Supp.2010. This Court has jurisdiction because the case involves the validity of a state statute. Mo. Const. art. V, sec. 3. There was no error. The judgment of the trial court is affirmed.

**Factual and Procedural Background**

Defendant is Victim's first cousin. In January 2011, Defendant was twenty-eight years old, and Victim was fifteen years old. On January 29, 2011, Victim spent the day with Defendant and her brother (hereinafter, "Brother"). Defendant asked Victim to baby sit his three children that evening, so that he could go out drinking with

---

1. All further statutory references herein are to RSMo 2000.

Brother and another friend. Victim agreed.

Before leaving for the evening, Defendant offered Victim marijuana, and Victim smoked it. After Defendant and Brother left, Defendant's children and Victim fell asleep in the living room.

When Defendant and Brother returned, Defendant woke Victim by rubbing her legs and asking, "Do you want to be cousins with benefits?" Victim said, "No." Victim looked for Brother and found him at the kitchen table. Victim attempted to talk to him, but he did not want to talk. Brother then went into the living room and passed out on the couch.

Victim remained in the kitchen. Defendant joined her, got a beer from the refrigerator, and offered one to Victim. Victim declined. Defendant then got some marijuana and smoked it. Defendant and Victim talked for three to four hours, including a conversation about Victim's prior suicide attempt. Defendant stated he understood Victim's feelings because he also had suicidal thoughts, and he subsequently assured Victim that her family loved her.

During their conversation, Defendant lifted Victim onto the kitchen counter and stood directly in front of her. Victim began crying because she was uncomfortable with Defendant. Defendant began touching Victim's breasts and her buttocks over her clothing. Defendant kissed Victim. Defendant then moved his hands under Victim's pants and touched her bare buttocks. Victim attempted to push Defendant away, but he did not stop touching her. Defendant began to move his hands toward her vagina. Victim shoved Defendant away. Defendant then pulled down his pants and underwear, exposing his penis, and telling Victim to "touch it."

Victim refused and went to the bathroom. Defendant followed her and waited outside the bathroom door. When Victim came out of the bathroom, she told Defendant he needed to go to bed. Defendant was intoxicated and had difficulty walking or standing. Victim assisted Defendant in walking to his bedroom, and in doing so, Victim entered Defendant's bedroom with him, and Defendant laid in bed. Victim attempted to leave, but Defendant grabbed her and pulled her onto the bed with him. Defendant rolled on top of Victim. Defendant told Victim she could not tell anyone what happened. Victim pushed Defendant off of her and returned to the living room to sleep in a chair.

The next morning, Victim left the house without talking to Defendant. Victim did not tell anyone what happened because she was worried Defendant would get into trouble.

Eventually, Victim wrote about her experience in a school writing assignment. After her teacher read the assignment, the teacher passed it to a guidance counselor who spoke with Victim. Victim told the counselor what happened with Defendant. The counselor called the police.

Lieutenant Scott Schoenfeld (hereinafter, "Lieutenant") contacted Victim, arranging for her to speak with Defendant while he listened to their conversation. During the conversation between Victim and Defendant, Victim reminded Defendant that he had asked to be "cousins with benefits." Defendant responded, "Well, do you want to? ... I said that? That's awesome." Defendant stated he remembered kissing, hugging, and holding Victim.

Thereafter, Lieutenant contacted Defendant at his residence. Lieutenant arrived at Defendant's residence with three additional officers because Lieutenant was concerned Defendant might harm himself. Defendant refused to allow the officers into his home, so he spoke with them on

the porch. When Defendant requested to go inside to retrieve his cell phone, Lieutenant only allowed him to do so if an officer accompanied him. Defendant agreed, allowing Lieutenant several steps inside the house to watch him retrieve his phone. They both then returned to the front porch and continued talking.

Lieutenant advised Defendant of his *Miranda*[2] rights. Defendant indicated he understood his rights and would speak with the officers. Defendant admitted he kissed Victim. Defendant admitted there was marijuana in his home, and he gave Victim marijuana, which she smoked. After questioning by Lieutenant, Defendant admitted he exposed himself to Victim.

Defendant then consented to a search of his home. The officers located marijuana rolling papers and a marijuana pipe in the location Defendant stated it would be. Lieutenant placed Defendant under arrest.

Following the trial, the jury found Defendant guilty and recommended a sentence of five years' imprisonment for distribution of a controlled substance to a minor and four years' imprisonment for attempted second-degree statutory sodomy. On August 6, 2012, the trial court imposed the sentence recommended by the jury and ordered Defendant to serve the sentences consecutively for a total of nine years' imprisonment. The court placed Defendant in the Sex Offender Assessment Unit (hereinafter, "the SOAU") program pursuant to section 559.115.

Defendant filed his notice of appeal on August 16, 2012. On November 8, 2012, the trial court denied Defendant's release on probation and ordered the nine-year sentence to be executed. This appeal follows.

### 1. Incomplete Transcript

■ Defendant claims he is denied meaningful appellate review because the transcript from his trial is incomplete. Defendant asserts there are portions of the transcript missing. Accordingly, Defendant believes he is entitled to a reversal of his conviction and sentence.

■ While an appealing party is entitled to file a full and complete transcript for appellate review, an incomplete or inaccurate record does not warrant automatic reversal of a conviction. *State v. Shockley,* 410 S.W.3d 179, 186 (Mo. banc 2013); *State v. Middleton,* 995 S.W.2d 443, 466 (Mo. banc 1999). A defendant may be granted a new trial only if the defendant "exercised due diligence to correct the deficiency in the record *and* he was prejudiced by the alleged defects." *Shockley,* 410 S.W.3d at 186 (emphasis in original); *see also Middleton,* 995 S.W.2d at 466.

Defendant asserts there were twenty-one instances in the trial transcript that were labeled as being indiscernible. Accordingly, Defendant believes there can be no meaningful review of this case. The State concedes there are multiple instances wherein the transcript was indiscernible.

Rule 30.04(h) provides that if there is a material omission from the record on appeal, the parties may stipulate to the omission or misstatement in order to correct the record. Defendant states that despite his due diligence, he did not receive a complete transcript. However, Defendant's only act of "due diligence" was to request the transcript. There is no indication in the record that Defendant made any attempt to supplement the record in any way "to obtain by stipulation or motion the substance of the missing testimony or argument." *State v. Borden,* 605

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

S.W.2d 88, 92 (Mo. banc 1980); *see also Middleton,* 995 S.W.2d at 466.

■ Further, many of the instances where the transcript is indiscernible do not thwart appellate review because Defendant has not raised a related issue on appeal. Defendant does not allege that most of these instances were relevant to the issues that he presents on appeal. Accordingly, any of those gaps have not prejudiced Defendant.

■ The only issue that Defendant claims is relevant to his appeal is a discussion regarding the exclusion of Defendant's witnesses. Defendant asserts that the applicable indiscernible part of the transcript is where defense counsel attempted to preserve the trial court's ruling for appeal. Fundamentally, Defendant inartfully attempts to argue that defense counsel's offer of proof[3] was excluded from the transcript. However, the record that Defendant presents to this Court does not support this assertion.

Defendant directs this Court's attention to a portion of the transcript wherein defense counsel, the State, and the trial court had a discussion about the witnesses who were excluded from testifying at trial. This discussion occurs after Defendant questioned the witnesses he called and prior to the jury instruction conference. The discussion centers around whether defense counsel should make an offer of proof. The trial court clearly states that it will not prevent defense counsel from making an offer of proof, but that its decision to exclude the witnesses was due to a discovery violation of a late endorsement and not relevancy. The transcript further clarified:

> The court: (indiscernible) relevant not be without reason, absolutely make an offer of proof and show that I'm not in that respect but my ruling was that because it was a late endorsement, two days before trial and done well after the previous order was in place. That's why they were excluded, not because they may not have anything relevant to say. So, if you want to take the time to put them on and let them testify, I mean, I can't prevent you from doing that, but I'm telling you that it doesn't affect the Court's ruling.
>
> [Defense counsel]: I guess I understand that but, preserving every right possible.
>
> [The State]: Your issue on appeal would be that the Court erred in not allowing you to put on these witnesses because of the endorsement, not because there was a ruling or inadmissible testimony.
>
> The court: Was I wrong in saying that you couldn't have a late endorsement, then that's the case then when you guys come back, your offer of proof isn't going to choose the Court of Appeals of any knowledge of that issue because the issues that they gave irrelevant testimony or they (indiscernible) but again, going—

The proceedings then returned to open court and turned to a discussion of jury instructions.

---

**3.** An offer of proof is required to demonstrate to the trial judge what the rejected evidence would show, educating the trial judge as to the admissibility of the proffered testimony, and allowing the trial judge to consider the testimony in context. *State ex rel. Praxair, Inc. v. Missouri Public Service Com'n,* 344 S.W.3d 178, 185 (Mo. banc 2011); *State v. Sanchez,* 186 S.W.3d 260, 264 (Mo. banc 2006). Without a specific and definite offer of proof, the appellate court typically does not review excluded evidence. *State v. Curry,* 357 S.W.3d 259, 265 (Mo.App.E.D.2012). The offer of proof must show: "(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *State v. Tisius,* 92 S.W.3d 751, 767 (Mo. banc 2002).

It is unclear how any of the indiscernible portions of this discussion prejudiced Defendant. The trial court clearly would have allowed Defendant to make an offer of proof by allowing each of the excluded witnesses to take the stand and place their proffered testimony on the record. Had defense counsel made the offer of proof, there may have been a lengthy portion of the transcript missing as Defendant claims there were multiple witnesses excluded. Further, had the transcript been missing numerous pages of proffered testimony, Defendant could have exercised due diligence in supplementing the record at least by means of a stipulation that various defense witnesses testified and the proffered testimony was no longer recorded in the transcript. Defendant fails to demonstrate any portion of the indiscernible transcript prejudiced him.

## 2. Exclusion of Defense Witnesses

 Defendant claims the trial court abused its discretion in preventing him from calling ten witnesses on his behalf due to a discovery violation. The trial court sanctioned Defendant from presenting witnesses whom he failed to disclose in a timely manner.

The State filed its original request for disclosure on May 4, 2011, and the trial court set this matter for trial on February 29, 2012. On February 22, 2012, Defendant filed his endorsement of witnesses with thirty-four names without addresses or contact information and a motion for a continuance. The State contested both of Defendant's motions.

The docket sheets indicate that on February 23, 2013, the trial court ordered Defendant to submit a list of names and addresses for his potential witnesses with-

in thirty days. The trial court also removed the case from the February docket, rescheduling the pretrial conference and trial for April 6 and May 31, 2012, respectively. Notice was sent to all parties.

The next docket entry was on April 4, 2012, when Defendant's counsel filed a motion to withdraw. Defendant secured new counsel who filed his entry of appearance on April 13, 2012.

Defendant filed his motion to endorse seventeen witnesses on May 29, 2012, two days before trial was set to begin and more than ninety-five days after the trial court's order. There was a hearing on Defendant's motion to endorse on May 31, 2012.

At that hearing, the State specifically objected to ten of the seventeen witnesses Defendant sought to endorse because it did not know who they were, what they would say, nor did it have time to track them down in the moments before trial. The State did not object to seven of the witnesses listed on Defendant's endorsement. Defendant countered that the State should have been familiar with all of those individuals because they were listed in the police report, but the State argued that it should not have to investigate every person listed in a police report without being given any indication that person would be called as a witness.[4] Defendant's motion was overruled and trial began.

 The decision to exclude evidence as a sanction for a discovery violation is left to the trial court's discretion. *State v. Walkup*, 220 S.W.3d 748, 757 (Mo. banc 2007); Rule 25.18. The trial court's decision only will be reversed on appeal when the sanction results in fundamental

4. The State gave one example as a means to clarify its argument. In the police report there is a comment about "my friend, Joe." Defendant sought to endorse Joe Rothermich who was the "friend" from the police report.

unfairness to the defendant. *State v. Cox*, 248 S.W.3d 720, 722 (Mo.App.S.D.2008). "Fundamental unfairness exists if there is a reasonable likelihood that the failure to disclose affected the result of the trial." *State v. Duncan*, 385 S.W.3d 505, 508 (Mo. App.S.D.2012) (*citing State v. Rousan*, 961 S.W.2d 831, 843 (Mo. banc 1998)).

■■■■ "As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense witness whose testimony would have been cumulative, collateral, or if the late endorsement would have unfairly surprised the State." *State v. Hopper*, 315 S.W.3d 361, 367 (Mo.App.S.D.2010) (*quoting State v. Williams*, 853 S.W.2d 371, 373–74 (Mo. App.E.D.1993)). Further, the exclusion of witnesses may be appropriate if there is no reasonable justification for the failure to disclose. *Hopper*, 315 S.W.3d at 370. The exclusion of a significant defense witness would likely be an abuse of discretion if the explanation tended to show good cause for the nondisclosure. *Id.*

■■■■ While the State made a compelling argument that it would be surprised unduly by some of the witnesses Defendant sought to endorse, Defendant neglects to provide any justification regarding the late endorsement of witnesses.[5] Further, Defendant admits the only reason he wanted to call the excluded witnesses was to challenge Victim's veracity. Defendant called and questioned Victim's mother at trial, demonstrating Victim did not always tell the truth. Merely presenting additional evidence regarding Vic-

tim's veracity would have been cumulative. Defendant fails to demonstrate fundamental unfairness occurred with the imposition of the trial court's sanction and no abuse of discretion occurred.

### 3. Failure to Suppress Evidence

■■■ Defendant alleges the trial court erred in failing to suppress the evidence of marijuana seized from his home without a warrant. Defendant claims this seizure violated his right to be free from an unreasonable search and seizure.

■■■■ This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling, disregarding any contrary evidence or adverse inferences. *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012). Whether conduct violates the Fourth Amendment is a question of law, which is reviewed *de novo*. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007).

As a preliminary matter, this Court notes that this issue is not preserved for appeal. Defendant did not file a pre-trial motion to suppress evidence, object to the introduction of this evidence, or include a request for review in his motion for a new trial. Accordingly, only plain error review is utilized. Rule 30.20.

■■■■ The Fourth Amendment to the United States Constitution ensures the right of citizens to be free from unreasonable searches and seizures. A search or seizure generally is permissible only when

---

**5.** A trial court abuses its discretion when excluding a defense witness as a sanction for a discovery violation when that witness could present a potential alibi for the defendant. *See Hopper*, 315 S.W.3d at 370–71. A trial court also has been found to abuse its discretion in imposing a discovery violation when excluding the testimony of a mental health expert regarding the mental state of the de-

fendant at the time of the offense. *See State v. Simonton*, 49 S.W.3d 766 (Mo.App.W.D. 2001). However, a trial court properly excluded the testimony of three alibi witnesses when they were not disclosed timely by the defendant because it was unreasonable to believe their identities were unknown during the pre-trial process. *See State v. Harris*, 664 S.W.2d 677 (Mo.App.E.D.1984).

there is probable cause to believe a person has committed or is committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). "As a general rule, warrantless seizures are unreasonable and unconstitutional." *Norfolk,* 366 S.W.3d at 533. However, there are exceptions to the general rule requiring a search warrant when exigent circumstances are present. *State v. McNeely,* 358 S.W.3d 65, 69 (Mo. banc 2012). "Exigent circumstances exist if the time needed to obtain a warrant would endanger life, allow a suspect to escape, or risk the destruction of evidence." *Id.*

Here, when Lieutenant and the officers first arrived at Defendant's home, he did not want them to enter his home. The officers remained on his front porch while talking to Defendant. Defendant then agreed to allow Lieutenant a few steps into his home to observe Defendant retrieving his cell phone. Then, they returned to the front porch. Defendant was advised of his *Miranda* rights, indicated he understood them, and agreed to answer questions. Defendant then admitted to providing Victim marijuana, kissing Victim, touching Victim's buttocks, and exposing himself to Victim. Defendant further admitted to Lieutenant he had marijuana in the house and explained where he kept it. Defendant then consented to a search of his home. Lieutenant discovered marijuana during this search.

The record demonstrates Defendant freely consented to a search of his home after telling the officers he had marijuana and where it was located. The trial court committed no error, plain or otherwise, in admitting this evidence.

## 4. Constitutional Validity of section 559.115

██ Defendant alleges section 559.115 [6] is unconstitutional as applied in that it violated his right to equal protection. Defendant asserts he was forbidden from participating in the program to which he was sentenced and securing the possibility of early release because he exercised his right to appeal. Defendant claims that the mere filing of his notice of appeal rendered him ineligible for the SOAU.

The record before this Court is devoid of a document or report detailing Defendant's participation or performance in the SOAU program. Defendant claims he attempted to obtain his records from the Department of Corrections, but was denied any information due to privacy concerns. It is clear from the trial court's documents that Defendant was to enter the SOAU for a 120–day program on August 6, 2012, and the date it was due to end would be December 4, 2012. Yet, as of November 8, 2012, the record indicates the program ended prior to the anticipated 120 days.

Defendant asserts, without support, that he was unable to participate in the SOAU because he elected to appeal his conviction. Defendant's argument is refuted by the record of the docket entries from the court of appeals. After Defendant filed his notice of appeal on August 16, 2012, the court of appeals acknowledged his appeal. The court of appeals then sent a dismissal notice and indicated that his record on appeal would be due on December 13, 2012. Thereby, Defendant would have had every opportunity to participate in the SOAU through the completion of 120 days.

**6.** Defendant references section 559.115.1 which provides: "Neither probation nor parole shall be granted by the circuit court between the time the transcript on appeal from the offender's conviction has been filed in appellate court and the disposition of the appeal by such court."

## Conclusion

The trial court's judgment is affirmed.

RUSSELL, C.J., BRECKENRIDGE, FISCHER and WILSON, JJ., concur.

TEITELMAN, J., concurs in part and dissents in part in separate opinion filed.

STITH, J., concurs in opinion of TEITELMAN, J.

RICHARD B. TEITELMAN, Judge, Concurring in Part and Dissenting in Part.

I respectfully dissent from the principal opinion to the extent it holds that the trial court did not abuse its discretion in excluding 10 of the defendant's witnesses as a sanction for late endorsement of those witnesses. I agree with the principal opinion's recitation of the facts and explanation of the applicable law. I disagree, however, with the conclusion that defendant was not prejudiced because the testimony from the excluded witnesses would have been cumulative to the victim's mother's testimony that the victim did not always tell the truth.

The relative credibility of the defendant and the victim was an important consideration in this case. The victim's veracity is not a fact that is readily susceptible to objective verification from a single source. This is not a case in which a witness's testimony is cumulative to an established fact. To the contrary, the defendant was trying to establish something much more elusive: the victim's tendency to lie. While the testimony from the victim's mother supported the defendant's argument that the victim did not always tell the truth, it does not sufficiently establish that fact so as to render subsequent similar evidence cumulative. The defendant's attempt to establish this tendency as a fact was hampered unnecessarily by the trial court's decision to exclude defense wit-

nesses from trial. While defense counsel should not be permitted to game the system and surprise the state at trial, the individual caught in the middle—the defendant—should not be deprived of a key element of his or her defense to charges that, if proven, will result in a lengthy term of imprisonment.

For these reasons, I respectfully dissent from the principal opinion to the extent it holds that the trial court did not abuse its discretion in excluding the defendant's witnesses.