

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111156 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| v. | ) | Cause No. 20SL-CR02490-01 |
| | ) | |
| MICHAEL BRYANT, | ) | Honorable Richard Stewart |
| | ) | |
| Appellant. | ) | |
| | ) | Filed: March 12, 2024 |

Michael Bryant appeals the judgment entered after a jury found him guilty of first-degree sodomy, first-degree kidnapping, third-degree assault, and armed criminal action. The circuit court's judgment is affirmed.

## Factual and Procedural Background[1]

Bryant was Victim 1's drug dealer. On April 10, 2020, Victim 1 contacted Bryant to obtain drugs. Bryant picked Victim 1 up from her mother's house in Troy, Missouri and drove her to his cousin's abandoned recreational vehicle in St. Louis. Victim 1 used Bryant's drugs, and the two had anal intercourse. Victim 1 testified that she did not want to have intercourse and that she screamed, begged, and cried for him to stop. At some point during the incident, Bryant hit Victim

---

[1] The relevant evidence at trial is presented in the light most favorable to the verdict. *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018).

1 in the face. Victim 1 did not go to the police right away because she was scared that Bryant might kill her.

On April 19, 2020, Victim 2 was looking for a ride to her friend's house with the hope of obtaining drugs. Victim 2 did not know Bryant, but he stopped and offered her a ride. After she entered Bryant's vehicle, he drove the wrong direction headed away from her friend's house. Victim 2 tried to open the door and exit the moving vehicle, but Bryant would not slow down. Bryant again drove to his cousin's recreational vehicle where he locked Victim 2 inside and told her to take her clothes off. Victim 2 tried exiting the RV. Bryant hit her in the face and held a hammer over her head. Victim 2 did everything Bryant told her to do because she was scared that Bryant might kill her. Bryant gave Victim 2 drugs, made her perform oral sex, and inserted his penis in her anus against her will. Bryant left the RV, and Victim 2 walked to a nearby fire station. An ambulance took her to the hospital where a nurse conducted a sexual assault rape kit. The swabs taken from underneath Victim 2's fingernails contained Bryant's DNA.

The State charged Bryant with four counts of first-degree sodomy, two counts of first-degree kidnapping, two counts of third-degree assault, and three counts of armed criminal action. The jury found Bryant not guilty on one count of first-degree sodomy, one count of first-degree kidnapping, and one count of armed criminal action, but guilty on all other counts. The circuit court sentenced Bryant as a persistent and predatory sexual offender to life imprisonment with eligibility for parole after fifteen years and two additional terms of ten years' imprisonment to be served consecutively. Bryant appeals.

## Analysis

### *Prior Inconsistent Statements*

Bryant argues that the circuit court abused its discretion in sustaining the State's objection to Victim 1's cross-examination.[2] Bryant asserts he should have been permitted to question Victim 1 about alleged vaginal penetration in order to impeach her with prior statements to a detective investigating the incident.

During cross-examination of Victim 1, Bryant's counsel asked whether she had vaginal intercourse with Bryant. The State objected on relevance grounds because rape was not an act charged in the indictment. The circuit court sustained the State's objection. Following the circuit court's ruling, and outside the hearing of the jury, the State suggested the proper method of impeachment to Bryant. However, Bryant's counsel responded, "I'm not impeaching her." He explained that he was probing her memory about what occurred that day. The State maintained its original objection, the circuit court maintained its ruling, and cross-examination resumed with a new line of questioning. Bryant's counsel did not make an offer of proof regarding what Victim 1's answer to the question would have been.

At the close of the State's evidence, Bryant's counsel made an offer of proof with the investigating detective. During this offer of proof, the detective testified that Victim 1 told him that she and Bryant had engaged in vaginal intercourse. Bryant's counsel explained that he wanted to cross-examine Victim 1 regarding whether she had vaginal intercourse with Bryant in anticipation of questioning her about whether she had been raped. Bryant's counsel expected Victim 1 to testify that she had not been raped, and he planned to impeach her by asking her

---

[2] Bryant also claims that the circuit court abused its discretion in refusing to allow Victim 2 to be cross-examined about prior inconsistent statements. However, the circuit court did not abuse its discretion because Bryant did not attempt to lay foundation for impeachment.

whether she told police she had been raped. While the detective confirmed that Victim 1 stated she was raped as well as sodomized, no testimony from Victim 1 was ever adduced indicating how she would respond to those questions.

A circuit court has "broad discretion in determining the admissibility of substantive evidence and in determining the extent and scope of cross-examination, including impeachment of a witness by use of a prior inconsistent statement." *Black v. State*, 151 S.W.3d 49, 55 (Mo. banc 2004) (quoting *Long v. St. John's Regional Health Center*, 98 S.W.3d 601, 605-06 (Mo. App. 2003). The circuit court's decision will be reversed only when there is a clear abuse of discretion. *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016).

Bryant's argument in this Court differs from his argument to the circuit court. When the State objected to Bryant's questioning as irrelevant and improper impeachment, Bryant's counsel denied that he was attempting to impeach the witness. Instead, his counsel's position was that the facts and circumstances of the events in the RV were relevant to the case. The circuit court sustained the objection on relevance grounds. Bryant did not suggest that he had, in fact, been attempting to impeach Victim 1 until later in the trial.

Even setting aside Bryant's shifting rationale, this Court cannot review Bryant's claim because he failed to make a sufficient offer of proof. To preserve a claim that evidence was improperly excluded, "the proponent must attempt to present the excluded evidence at trial, and if it remains excluded, make a sufficient offer of proof." *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014). "An offer of proof is required to demonstrate to the [circuit court] what the rejected evidence would show, educating the [circuit court] as to the admissibility of the proffered testimony, and allowing the [circuit court] to consider the testimony in context." *State v. Michaud*, 600 S.W.3d 757, 761-62 (Mo. banc 2019) (quoting *State v. Hillman*, 417 S.W.3d 239, 244 n.3

(Mo. banc 2013)). "Offers of proof must show what the evidence will be, the purpose and object of the evidence, and each fact essential to establishing admissibility." *Id.* at 762 (quoting *Hunt*, 451 S.W.3d at 263).

Bryant attempted to make an offer of proof to preserve this issue at the close of the State's evidence. Bryant's offer only included testimony from the investigating detective. It did not include the testimony from Victim 1 that Bryant now claims was erroneously excluded. Bryant's counsel told the circuit court how counsel believed that Victim 1 would testify, but counsel's belief as to the testimony of an adverse witness does not make a sufficient offer of proof.

As a result, Bryant's first point relied on is not preserved for review, and the point is denied.

*Voir Dire*

Bryant argues that the circuit court abused its discretion by overruling his objection to the State defining the reasonable doubt standard during *voir dire*. Bryant asserts the State's questions were not designed to probe for bias, but rather were an improper attempt to define proof beyond a reasonable doubt.

When the jury was impaneled, the circuit court read an instruction defining reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt … [t]he law does not require proof that overcomes every possible doubt." During *voir dire*, the State referenced that instruction and asked whether any of the venirepersons would require proof "that overcomes all possible doubt." One venireperson replied in the affirmative, resulting in the following exchange:

State: The law requires proof beyond a reasonable doubt, and not all possible doubt. Would you require proof that overcomes all possible doubt?

Venireperson: Yes.

State: You would? Even though the law requires only proof beyond a reasonable doubt?

Venireperson: I guess I have to have it explained a little bit.

Bryant objected to the State "[d]efining or parsing the reasonable doubt instruction." The circuit court overruled Bryant's objection, but cautioned the State to avoid defining the term reasonable doubt. The State explained that:

> [t]here is a difference though between evidence that leaves you firmly convinced and being convinced beyond all possible doubt. That is an impossible burden. The only way I could prove somebody beyond all possible doubt would be to take you back in time to witness the event yourself. I cannot do that. That is why the law requires proof that leaves you firmly convinced.

The State asked the venireperson again whether they would require proof that overcomes all possible doubt. When the venireperson replied in the negative, the State asked the venirepanel whether they were comfortable with that instruction and able to follow it.

This Court reviews a circuit court's rulings on *voir dire* for abuse of discretion. *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000). The party claiming the circuit court abused its discretion during *voir dire* has the burden to demonstrate a "real probability" that he was prejudiced. *Id.* at 311.

Bryant cites to a number of previous opinions in which this Court and the Supreme Court of Missouri held that arguments by prosecutors attempting to define reasonable doubt constitute reversible error. *See State v. Williams*, 659 S.W.2d 778, 781 (Mo. banc 1983). At times, this Court has been rather forceful with its criticism of prosecutors who attempted to define the concept of reasonable doubt. *State v. Morris¸* 680 S.W.2d 315, 317 (Mo. App. 1984) (noting the numerous times that prosecutors had been admonished, and stating, "It is past time that [S]tate counsel take cognizance of such practices, totally terminate them and eliminate the problems thus ensuing to trial and appellate courts.")

6

At the time many of these opinions were issued, there was no approved definition of "reasonable doubt."[3] In fact, the Notes on Use for MAI-CR 2.20 specifically prohibited a court, and by extension the prosecutor, from attempting to define reasonable doubt. That changed in 1984 with the modification of MAI-CR2d 1.02, 2.20, and 15.38, which included a definition for reasonable doubt that is nearly identically to the current MAI-CR4th 402.04.[4] *State v. Antwine*, 743 S.W.2d 51, 62 (Mo. banc 1987). This new definition was established in response to § 546.070(4) RSMo Supp. 1984, in which the General Assembly specifically directed that all criminal trials should include an instruction defining the term reasonable doubt. *Id.*

Because the law now includes an approved definition of reasonable doubt, the question before this Court should not simply be whether the prosecutor defined reasonable doubt. That task is already accomplished by the instruction. Instead, the question should focus on whether the prosecutor misstated the law when asking the jury about the definition. *See State v. Edwards*¸116 S.W.3d 511, 537 (Mo. banc 2003) (analyzing whether the prosecutor misstated the law when he stated during *voir dire* that the State had the burden of proving aggravating circumstances "to your satisfaction.").

---

[3] There are some outliers. *See State v. Rhodes*¸ 988 S.W.2d 521, 527 (Mo. banc 1999) (relying on the pre-definition opinion in *State v. Williams* to support the proposition that "[a]rguments by prosecutors attempting to define reasonable doubt represent reversible error.").

[4] In relevant part, MAI-CR4th 402.04 states:

A reasonable doubt is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. The law does not require proof that overcomes every possible doubt. If, after your consideration of all the evidence, you are firmly convinced that (a) (the) defendant is guilty of the offense charged, you will find him guilty. If you are not so convinced, you must give him the benefit of the doubt and find him not guilty.

Here, the record shows no misstatement of the reasonable doubt definition.[5] Rather, the record demonstrates that the State asked the venire whether anyone would be unable to follow the instruction by the court. In response, one venireperson indicated difficulty in following the instruction and asked for clarification. The State responded largely by rereading the instruction to the venire and noting that the State was not required to prove their case "beyond all possible doubt." That is consistent with, if not nearly verbatim from, MAI-CR4th 402.04. The State's entire discussion on the burden of proof was brief and was not an attempt to redefine reasonable doubt. *See State v. Thurmond,* 616 S.W.3d 316, 322 (Mo. App. 2020) (finding the State's line of questioning venirepersons about whether they believed the reasonable doubt standard was sufficient "more akin to a discussion of the burden of proof, rather than a definition").

Bryant failed to demonstrate that the State introduced an incorrect definition of reasonable doubt. Therefore, the circuit court did not abuse its discretion in overruling Bryant's objection.

## Conclusion

The circuit court's judgment is affirmed.

_____
John P. Torbitzky, P.J.

James M. Dowd, J., and
Michael S. Wright, J., concur.

---

[5] Although the Court finds no misstatement of law in this case, the Court strongly urges prosecutors and defense counsel alike to exercise great care when questioning the jury on the burden of proof. Counsel may ask jurors if they believe they can follow the instruction given by the Court, but anything further risks mischaracterizing the carefully worded definition included in MAI-CR 402.04. A misstatement of this instruction, or even an unintentional misreading, can create significant prejudice to the defendant. The Supreme Court has defined reasonable doubt. Counsel should refrain from burdening the jury with counsel's thoughts on what that definition might mean.