

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111423 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of City of St. Louis |
| vs. | ) | Cause No. 2222-CR01710 |
| | ) | |
| PRINSHUN MCCLAIN, | ) | Honorable Rex M. Burlison |
| | ) | |
| Appellant. | ) | FILED: October 1, 2024 |

### Opinion

Prinshun McClain (McClain) appeals from the trial court's judgment following jury convictions on two counts of second-degree murder and two counts of armed criminal action. McClain raises two points on appeal, both of which challenge the admission of evidence obtained through warrantless searches in violation of his constitutional rights as protected by the Fourth Amendment. Point One alleges the trial court erred in denying his motion to suppress and admitting evidence of a bag recovered from McClain's grandmother's living room containing the murder weapon. Point Two alleges the trial court erred in denying his motion to suppress and admitting evidence seized from McClain's person during his arrest because his location was obtained through a warrantless seizure of his location via cell phone location data. For both points, we find the evidence was lawfully seized pursuant to recognized search warrant exceptions. In Point One, the bag containing the murder weapon was abandoned by McClain

when he fled the state to avoid arrest, and therefore the trial court did not err in denying the motion to suppress and admitting the murder weapon as a defendant has no Fourth Amendment privacy interest in abandoned items. In Point Two, locating McClain with the cellphone location data was done under exigent circumstances given that he was the prime suspect in three murders committed within the span of twenty-four hours, thus the trial court did not err in denying the motion to suppress and admitting the evidence obtained incident to his arrest. Accordingly, we affirm the trial court's judgment.

Background

A.      The Underlying Murders and Investigation

On August 11, 2021, the St. Louis Metropolitan Police Department (SLMPD) responded to a double homicide on Pleasant Street. In an upstairs apartment, police found the deceased bodies of two Victims, Mother and her eight-year-old Daughter.[1] Both Victims were bound, Mother was blindfolded, and both bore evidence of gunshot wounds.

Earlier that same day, SLMPD responded to a homicide on Dover Street for a fatal gunshot wound to the head. This victim (Dover Victim) was found on the porch of the home she shared with her brother.

Still on the same day of August 11, 2021, SLMPD took various steps to investigate the three murders. SLMPD interviewed McClain and his grandmother (Grandmother), who lived in the downstairs apartment below Victims. McClain denied any involvement in the murders. SLMPD reviewed Grandmother's Ring video door camera recordings and observed McClain walking to the back of the building around the time of Victims' murders. Meanwhile, SLMPD also reviewed video footage related to Dover Victim, which depicted a man matching McClain's

---

[1] Names are redacted pursuant to § 509.520, RSMo. (Cum. Supp. 2023).

2

description, wearing the same clothes McClain was shown wearing in the Ring recording, on a MetroLink bus with Dover Victim on the same evening she was killed. SLMPD identified McClain as a suspect in both murder cases and sought to arrest him. SLMPD applied to T-Mobile with an "exigent request" to obtain McClain's live location data and forty-eight-hours of historical cell phone calls. Using the cell phone data, SLMPD narrowed down the location of McClain's phone and tracked him to his girlfriend's mother's residence in Granite City, Illinois in the early hours of August 12, 2021, where he was found inside his girlfriend's closet. McClain was arrested and extradited back to Missouri. Incident to McClain's arrest, SLMPD recovered from the closet a bag and backpack containing several of McClain's personal items, including his cell phone and the same clothes seen in video footage from both murder investigations. SLMPD subsequently obtained a warrant for the contents of the cell phone, including text messaging.

Later, on August 21, 2021, Grandmother contacted police. While moving out of the apartment, Grandmother found a bag under the couch she recognized as belonging to McClain. Grandmother told everyone helping her move to refrain from touching the bag. Grandmother informed police about the bag, and it was retrieved by SLMPD. Upon arriving at Grandmother's home, the responding SLMPD officer (Officer) found a blue Lacoste bag in plain view. Grandmother told him: "I know what these kids do and it's not my bag." Officer opened the bag and found inside a semi-automatic .45 pistol. Officer secured the gun and then seized both gun and bag.

B.      Suppression Motions and Hearing

Prior to trial, McClain filed two motions moving to suppress evidence he alleged was obtained through unlawful warrantless searches and seizures in violation of his constitutional rights. In one motion, McClain moved to suppress all physical evidence seized from

Grandmother's home, including the bag and the murder weapon found within it. McClain maintained Grandmother could not consent to the seizure and search of his bag. In another motion, McClain moved to suppress all evidence and testimony related to the search and seizure of McClain's person facilitated by the use of cell site location information and a cell site simulator. McClain argued cell site simulator data in particular presented a novel issue of law and urged the trial court to find that such data required a warrant supported by probable cause. The State filed responses in opposition, and the trial court conducted the hearing on both suppression motions on the first day of McClain's first trial[2] on November 1, 2022, ultimately denying both motions.

### 1. Bag and Murder Weapon

Evidence was adduced with respect to suppression of the bag and gun seized from Grandmother's apartment. Grandmother and Officer both testified at the suppression hearing. Grandmother stated McClain had lived with her in the months prior to the offenses and had been sleeping on the couch in her front room. Officer noted Grandmother did not specifically tell him the bag belonged to McClain but rather she denied ownership of it. Following the parties' arguments, the trial court denied the motion to suppress finding that SLMPD did not need to first obtain a warrant to search the bag and seize the contents. The trial court reasoned that as McClain's intent to run without his gun was clear from the hearing testimony, he had abandoned the property such that no expectation of privacy existed.

---

[2] To clarify the procedural record in this case, we note McClain was first tried for the murders of Mother, Daughter, and Dover Victim on November 1, 2022. In the first trial, the State proved Dover Victim was returning from a play rehearsal on the evening of August 10, 2021, when McClain followed her off of the MetroLink bus she rode home and shot her in the head. The jury found McClain guilty of second-degree murder and armed criminal action. Athough the jury convicted McClain on the murder of Dover Victim, it hung on the murders of Mother and Daughter. McClain's convictions relating to Dover Victim's murder were affirmed by this Court in *State v. McClain*, 685 S.W.3d 35 (Mo. App. E.D. 2024). The record from that case, ED111322, is also included in the record for this case as the suppression hearing relevant to this appeal was held on the record in the first trial and adopted by the trial court in the second trial.

**2.      Cell Phone Data**

Regarding the cell phone data, SLMPD detectives testified about how they obtained and used the cell phone data in McClain's investigation and arrest. The hearing testimony established that video footage from the two homicide investigations led to McClain becoming the prime suspect in the murders of Dover Victim and Victims, all three committed within twenty-four hours. SLMPD promptly sought to apprehend McClain and sent an "exigent request" to T-Mobile for his cell phone data, specifically, the location of McClain's phone using its unique numeric identifier (IMSI). Once the IMSI from McClain's phone was obtained, a cell-site simulator was used to hone in on a specific location of that phone.

SLMPD detectives testified the circumstances warranted an exigent request rather than waiting for a warrant because "lives [were] at risk" and obtaining a warrant could take anywhere from a few hours to a few days. T-Mobile agreed with SLMPD's determination on the exigent circumstances and provided a live read of the location of the phone using its IMSI, location updates at fifteen-minute increments, and a log of the previous forty-eight hours of call records. Detectives took the cell-site simulator to Granite City, Illinois, where the phone was pinging, and located McClain inside his girlfriend's mother's home. McClain was then arrested as a suspect in all three homicides and as a fugitive with an active warrant out of Texas on an unrelated matter. Found with McClain at the time of his arrest were various personal items, including a hoodie identified in the video footage depicting the suspect in all three homicides, and his cell phone.

After seizing McClain's phone upon his arrest, SLMPD applied for and received a warrant to search the contents of the phone. Recovered from McClain's phone were text messages sent shortly after Mother and Daughter's bodies were discovered and immediately after he was interviewed by SLMPD at Pleasant Street. Those texts read "They were all asking,

5

should I answer questions," "So my granny giving up my shit," "I'm not going on the run with my gun," and "I have to duck off." Additionally, McClain's typically active phone was inactive during the time period after he was seen on the ring camera walking towards Victims' door.

Following argument by the parties, the trial court denied the motion to suppress. The trial court noted "exigency is best looked at in the eyes of the officers on the scene." The trial court further expressed it was unlikely there were any circumstances more exigent than trying to locate and apprehend an individual who is a suspect in multiple murders perpetrated in a short time period.

C.    Trial

McClain was tried by jury on the charges involving Mother and Daughter on January 9–12, 2023. The State adduced testimony from a DNA analyst connecting him to the offenses. McClain's DNA was found on the bag seized from Grandmother's home and on the weapon located inside the bag. The bag's zipper pulls also contained DNA belonging to Mother or Daughter.[3] A SLMPD ballistics expert testified the seized gun, a K2 .45 pistol, was the gun used to shoot Victims. A SLMPD detective also testified that McClain's phone showed multiple searches for "K2 .45 pistol" and "zip ties" prior to the offense and searches for "pawn shop" around the time of the offense. McClain's cell phone data confirming texts sent and internet searches conducted was admitted as a T-Mobile business record.

In his post-arrest interview with police, McClain initially denied all involvement in the offense. Over a year passed before McClain alleged to law enforcement the real perpetrator was actually his brother (Brother). The State adduced evidence from Brother, his boss, and coworker that Brother could not have committed the murders because he was present at a job site at the

---

[3] Similarity in familial DNA prevented a definitive confirmation of Mother or Daughter.

6

time of the murders. McClain did not testify in his own defense or present evidence in his case-in-chief.

The jury convicted McClain on two counts of second-degree murder and two counts of armed criminal action. The jury found McClain not guilty on one count first-degree burglary and one count armed criminal action. The trial court sentenced McClain to consecutive life terms for the murder counts and consecutive terms of fifteen years for the armed criminal action counts. McClain filed a motion for new trial, where he renewed the claims from his motion to suppress. The trial court denied the motion, and this appeal follows.

Standard of Review

Review of a denial of a motion to suppress is limited to a determination of "whether there is substantial evidence to support the ruling." *State v. Fernandez*, 671 S.W.3d 856, 861 (Mo. App. W.D. 2023) (internal quotation omitted)). In making that determination, we review the suppression hearing and the trial. *Id.* "This Court defers to the trial court's credibility determinations and factual findings, inquiring only whether the decision is supported by substantial evidence, and reverses only if the trial court's decision is clearly erroneous." *State v. Hosier*, 454 S.W.3d 883, 891 (Mo. banc 2015). In reviewing whether the Fourth Amendment was violated, we review those questions of law *de novo*. *Fernandez*, 671 S.W.3d at 861; U.S. Const. amend IV.

Discussion

I. **Bag and Murder Weapon**

In McClain's first point, he alleges the trial court erred in admitting evidence obtained without a warrant from Grandmother's apartment, namely, a bag containing the gun later identified as the murder weapon. McClain reasons the trial court should have granted his motion to suppress because he had a reasonable expectation of privacy in the bag and its contents under

7

the Fourth Amendment and he had not forgone this privacy expectation. We disagree. We find that McClain abandoned the bag and its contents when he fled the state in an attempt to avoid arrest.

The co-extensive propositions of the Fourth Amendment and Missouri Constitution uniformly ensure an individual is free from unreasonable search and seizure. *State v. Haneline*, 670 S.W.3d 14, 22 (Mo. App. W.D. 2023); *see* U.S. Const. amend IV; Mo. Const. art. I, section 15. A warrantless search is presumptively invalid under the Fourth Amendment, and the State assumes the burden to prove the warrantless search was justified. *Id.* at 23 (internal citation omitted). A party moving for suppression must establish standing to assert a Fourth Amendment violation by proving both prongs of a two-prong test demonstrating the movant possessed a legitimate expectation of privacy: (1) the movant must have an actual subjective expectation of privacy in the place or thing searched, and (2) the expectation of privacy must be objectively reasonable or legitimate. *Fernandez*, 617 S.W.3d at 863 (internal citation omitted). The expectation is reasonable when the defendant conceals the subject contents in a container hidden from plain view. *Haneline*, 670 S.W.3d at 23.

Inasmuch as the Fourth Amendment protects against unreasonable government search and seizure, "[i]t is well held that the warrantless search or seizure of abandoned property does not violate the [F]ourth [A]mendment." *Id.* (internal quotation omitted). Under the abandonment doctrine, "[w]hen property is abandoned, the constitutional protections against unreasonable search and seizure no longer apply, because those protections are designed to protect one's person and dwelling." *Fernandez*, 671 S.W.3d at 863. If property is "voluntarily discarded, left behind, or otherwise relinquished[,]" then the defendant "no longer retain[s] a reasonable expectation with regard to it at the time of search or seizure." *Id.* (quoting *State v.*

8

*McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981)). Discerning whether an individual abandoned the property in question is "primarily an objective question of intent, which may be inferred from 'words spoken, acts done and other objective facts.'" *Haneline*, 670 S.W.3d at 23 (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973)).

First, we analyze whether McClain had a legitimate expectation of privacy in the bag and its contents. The State adduced evidence at the suppression hearing that, in the months leading up to the offenses, McClain had been living at Grandmother's apartment and sleeping on a couch in the main living area. Grandmother found the bag when she lifted the couch in the process of moving to a new residence. When Grandmother called SLMPD to retrieve the bag, she denied ownership of the bag, specifically telling Officer, "I know what these kids do and it's not my bag." Among other issues, McClain and the State dispute whether such evidence established a legitimate privacy interest, given the communal location of the couch under which the bag was found. *See Haneline*, 670 S.W.3d at 23.

McClain argues before this court that, due to being incarcerated at the time the bag and the murder weapon were recovered, he was not free to return to the apartment and recover the items because he was in custody, hence he did not voluntarily abandon the property. Consequently, McClain alleges he retained his legitimate expectation of privacy in the bag and its contents. McClain relies on *State v. O'Connor* to support this contention. *State v. O'Connor*, 685 S.W.3d 428 (Mo. App. W.D. 2023). In *O'Connor*, the defendant was a passenger in a vehicle and was being arrested on an outstanding warrant whereupon she told law enforcement that she wanted to "leave [her purse]" in the car with the vehicle's driver. *Id*. at 433. *O'Connor* is not factually analogous to the case at bar. Unlike the defendant in *O'Connor*, McClain was not in the process of being arrested when the property was seized and searched without a

9

warrant. *See id.* Nor is there any evidence that McClain asked his Grandmother to keep and store the bag for him until he returned. Instead, McClain abandoned the bag and murder weapon on August 12, 2021 when he left the state and indicated via text message his intent to flee and to leave his gun behind. Grandmother was unaware that the bag was in her home until she discovered it on August 21, some nine days after McClain's arrest.

Similarly unpersuasive is McClain's reliance on *State v. Pinegar* to support his argument that a reasonable expectation of privacy existed in the front room of Grandmother's house. *State v. Pinegar*, 583 S.W.2d 217 (Mo. App. W.D. 1979). The expectation of privacy in a personal footlocker located inside a bedroom, as was the case in *Pinegar*, is readily distinguishable from the floor underneath a couch in a living room. *Id.* at 220. The *Pinegar* court even noted that the defendant had a debatable expectation of privacy in the bedroom itself, which at times was shared with another person, and where other family members had access to that room. *Id.* McClain's sleeping place was not under his sole control but was accessible by anyone coming in the front door of Grandmother's home. In this physical situation, as inferred in *Pinegar*, it is less likely McClain's expectation of privacy was reasonable or legitimate. *See id.*

McClain further challenges Grandmother's ability to consent to the seizure in his absence. McClain's argument is fatally flawed in light of well-settled law finding searches with the consent of one party having "common authority" over a premises are constitutionally permissible. *See State v. Bowens*, 550 S.W.3d 84, 94 (Mo. App. E.D. 2018); *see also State v. Linegar*, 726 S.W.2d 728, 736 (Mo. banc 1987) (citing *State v. Johns*, 679 S.W.2d 253, 262 (Mo. banc 1984) ("the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared.") (overruled on other grounds by *State v. O'Brien*, 857 S.W.2d 212 (Mo. banc 1993)). Although

10

Grandmother gave SLMPD consent to search her own apartment on August 12, 2021, that search did not lead to the discovery of the bag. The bag was discovered by Grandmother over a week later when moving out of the apartment over which she had complete authority.

Regardless of whether such evidence demonstrated an initial privacy interest in the bag and its contents, McClain forfeits that privacy interest if he was found to have abandoned the bag. *See Fernandez*, 671 S.W.3d at 863; *see also Haneline*, 670 S.W.3d at 23. We can infer McClain's intent to abandon the bag and murder weapon through "words spoken, acts done and other objective facts." *See Haneline*, 670 S.W.3d at 23 (quoting *Colbert*, 474 F.2d at 176). Here, after speaking with SLMPD in Grandmother's apartment downstairs from where Victims' bodies were found, McClain sent multiple text messages indicating his intent abandon the bag and its contents with no plans to return. The text messages included statements such as "I have to duck off," "I'm not going on the run with my gun," and "So my granny giving up my info and shit." At the suppression hearing, the State argued these text messages, sent shortly after the murders, indicated McClain's intention to flee, which he did. When McClain was arrested, he was found with several personal effects, including a backpack which contained shoes, gardening gloves, deodorant, socks, and his cell phone. Also retrieved upon arrest was a hoodie McClain was seen wearing in video footage from both murder investigations. As his text messages intimated, neither the bag nor the murder weapon were with McClain at the time of his arrest.

This evidence supports an inference that McClain only took certain items with him while deliberately leaving others behind when he left Grandmother's apartment, demonstrating he "voluntarily discarded, left behind, or otherwise relinquished" the bag and murder weapon. *See Fernandez*, 671 S.W.3d at 863 (quoting *McCrary*, 621 S.W.2d at 273). Moreover, the evidence shows he left behind the bag and murder weapon while fleeing law enforcement, which further

11

supports a finding of abandonment. "Where an item is discarded in connection with flight from the law, protection against governmental intrusion upon that item is neither a 'reasonable' nor a 'legitimate' expectation." *State v. Immekus*, 28 S.W.3d 421, 429 (Mo. App. S.D. 2000) (quoting *Linegar*, 726 S.W.2d at 736, *abrogated on other grounds by State v. Taylor*, 238 S.W.3d 145 (Mo. banc 2007)).

Because he abandoned the bag containing the murder weapon at Grandmother's apartment when fleeing law enforcement, McClain cannot establish a legitimate expectation of privacy in the bag and gun. *See Fernandez*, 671 S.W.3d at 863. The warrantless search of the bag was thus lawful and did not violate McClain's Fourth Amendment rights. *See id.* Therefore, the trial court did not err in denying McClain's motion to suppress the bag and murder weapon as fruits of a poisonous tree because McClain did not have a reasonable expectation of privacy at the time of discovery. *See id.* Point One is denied.

## II.    Cell Phone Data

In McClain's second point, he alleges the trial court erred in denying his motion to suppress and admitting evidence incident to his arrest, because law enforcement located McClain through a warrantless search. Specifically, he maintains SLMPD's "exigent request" from T-Mobile for both real-time location data and historical call records violated his Fourth Amendment protections, thus all evidence relating to his arrest should have been suppressed as fruit of the poisonous tree. We disagree. Because McClain was a suspect in three homicides committed within twenty-four hours, he presented an immediate threat to public safety and the exigent circumstances permitted a warrantless search of his cell phone location data. Hence, any evidence seized upon his lawful arrest is not subject to the exclusionary rule.

The first issue in Point Two is whether McClain demonstrated a privacy interest in the cell phone data such that the warrantless search and seizure was unlawful.

12

The Supreme Court of the United States considered an individual's protected privacy interest in certain cell phone data in *Carpenter v. United States*, 585 U.S. 296, 303 (2018). McClain relies on *Carpenter* to argue there is a difference in seeking historical versus real-time phone data, and further, neither Missouri nor federal courts have ruled on the specific data request made by the SLMPD in this case. Specifically, the request included cell site simulator data, which is capable of capturing a phone's IMSI and tracking the phone's location by sending a signal that forces a phone to reveal its location and location in relation to any other cell phones it communicates with, allowing the location to be determined with precision, which is more direct than merely tracking pings to a cell tower. Indeed, *Carpenter* dealt solely with historic cell phone information and specifically declined to address real-time cell phone "tower dumps," stating its holding was a "narrow one." *Id.* at 316. *Carpenter* stated that although information given to a third party, such as a cell phone carrier, generally lacks a reasonable expectation of privacy, a person does have a legitimate expectation of privacy in his or her historical movements, thus obtaining that information is a search and requires a warrant under the Fourth Amendment. *Id.* at 307–8, 309–10.

We agree with McClain that Missouri courts have not yet offered specific guidance on privacy interests in real-time cell site simulators. Nevertheless, *assuming arguendo* that McClain had a legitimate expectation of privacy in the particular cell phone data warrantlessly obtained here, we must consider whether the State proved the warrantless search was justified under a recognized exception to the warrant requirement. *See Haneline*, 670 S.W.3d at 23. In this case, the State argues it met its burden to prove the warrantless search was justified by exigent circumstances.

13

A warrant is not needed when "'the exigencies of the situation' make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)). "There is no absolute test for exigent circumstances; the determination that exigent circumstances are present is made on a case-by-case basis." *State v. Kruse*, 306 S.W.3d 603, 609 (Mo. App. W.D. 2010) (internal quotation omitted)). Exigent circumstances "exist if the time needed to obtain a warrant would endanger life, allow the suspect to escape, or risk the destruction of evidence." *State v. West*, 548 S.W.3d 406, 420 (Mo. App. W.D. 2018) (quoting *State v. Hillman*, 417 S.W.3d 239, 247 (Mo. banc 2013)).

Here, the State argued at the suppression hearing, and the trial court agreed, there were compelling exigent circumstances requiring the immediate action of law enforcement. Regarding the case-by-case determination by officers, the trial court correctly stated "exigency is best looked at in the eyes of the officers on the scene." To that end, an SLMPD witness offered testimony defining exigent circumstances in which warrants are not sought as when "lives are at risk," which accurately identifies one of the exigent circumstances recognized in Missouri law. *See id.* The trial court stated it was "not sure that there's any more exigent situations" than trying to locate and apprehend an individual who is a suspect in multiple murders. In our de novo review, we find no error in the trial court's assessment given the evidence before it. *See Hosier*, 454 S.W.3d at 891. In particular, at the time SLMPD contacted T-Mobile, McClain was suspected of committing three murders within the span of twenty-four hours—including the murder of eight-year-old Daughter—in different locations across the City of St Louis. SLMPD proved at the suppression hearing it had collected sufficient information at that time to identify McClain as the key suspect for each of the murders. Specifically, the video footage from both

Dover Victim and Mother and Daughter's murder investigations showing McClain is wearing the same set of clothes. It is also notable that at the time of the investigation McClain's location was unknown to law enforcement, and it was also unknown whether he had access to a weapon or the ability to dispose of vital evidence.

SLMPD found McClain to be a danger to life, which is a valid exigent circumstance. *See State v. Mahsman*, 157 S.W.3d 245, 249 (Mo. App. E.D. 2004). This is ample justification to justify a warrantless search, thus, the State overcame its burden to justify the search and support a denial of the motion to suppress. *See Haneline*, 670 S.W.3d at 23. Accordingly, the trial court was not in error for denying McClain's motion to suppress. Point Two is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Kurt S. Odenwald, J., concur.

15